GUITAR v BIENIEK

Docket Nos. 58037–58040. Submitted April 19, 1977 (Calendar No. 4).
    —Decided January 23, 1978.

Jacqueline L. Guitar, administratrix of the estate of James D.
    Guitar, deceased, and other plaintiffs brought complaints
    against Patrick A. and Lillian Bieniek, Alcamo's Holiday House
    and Alcamo's Hall, Inc., for damages arising from an automo-
    bile accident and for damages under the dramshop act. Alca-
    mo's Holiday House is a rental hall where the Bienieks were
    guests at a wedding reception. Patrick Bieniek consumed alco-
    holic beverages at the reception and drove his automobile into
    another car, killing James D. Guitar, George L. Giasson, Jr.,
    and Shelly D. Victory and seriously injuring Robert Frohriep.
    The alcoholic beverages were privately provided by the recep-
    tion celebrants except for a keg of beer obtained through
    Alcamo's, which also provided a waiter to dispense the bever-
    ages. The Macomb Circuit Court, Walter P. Cynar, J., granted
    summary judgment for defendants Alcamo's Holiday House and
    Alcamo's Hall, Inc., on the ground that they were not subject to
    the liability provisions of the dramshop act. The Court of
    Appeals, Quinn, P. J., and R. B. Burns and D. E. Holbrook, Jr.,
    JJ., reversed and remanded for trial (Docket Nos. 23344, 23409,
    23377, 23436). Defendant Alcamo's appeals. *Held:*

    1. Doubtful or ambiguous provisions of a statute are con-
    strued not in isolation but with reference to and in the context
    of related provisions in order to give effect to the plain legisla-
    tive intent of the whole enactment.

    2. The "dramshop act" is a provision of the section of the
    Liquor Control Act which imposes upon a class consisting of
    retailers of beer or wine, or spirits, for consumption on the
    premises, and on Specially Designated Merchants, the duty to
    refrain from supplying liquor to a minor or an intoxicated
    adult and liability to respond in damages for so doing if such
    person should, by reason of an unlawful supplying, injure
    another in the latter's "person or property or means of support

REFERENCES FOR POINTS IN HEADNOTES
[1] 73 Am Jur 2d, Statutes § 142 *et seq.*
[2–7] 45 Am Jur 2d, Intoxicating Liquors § 578.

or otherwise". The language of the dramshop act following the bond form, which creates the right of action in certain persons, must be read with reference to the earlier liability language in the statute, *i.e.,* the language preceding the bond form as if uninterrupted by the bond form. Therefore, liability is limited to persons within the class of liquor traffickers specifically delineated in the dramshop provision of the act, a class consisting of licensed retailers of beer, wine, or spirits for consumption on the premises and Specially Designated Merchants. It is implicit that persons maintaining operations tantamount to those embraced within the class chargeable under the dramshop act but who have failed to obtain or maintain the license required by the Liquor Control Act are equally chargeable under the dramshop act.

3. In the instant case, while defendant Alcamo's procured keg beer for its lessee and assisted in dispensing alcoholic beverages, it was neither a retailer of beer, wine or spirits for consumption on the premises nor a Specially Designated Merchant. Moreover, operation of a rental hall by Alcamo's was not the type of liquor trafficking contemplated in the dramshop act provision of the Liquor Control Act. The Legislature intended to impose a special vicarious legal duty upon a group of liquor retailers who may need additional incentive to subject their immediate pecuniary interests in selling more liquor to the ultimate welfare of their patrons and society. This incentive is totally inapplicable to a setting in which the alcohol is supplied as a mere social amenity, which is outside the purview of dramshop liability.

Justice Levin concurred in the Court's construction of the dramshop act and with the decision that the complaints should be dismissed. In connection with the statement in the opinion of the Court that it is implicit that unlicensed persons maintaining operations tantamount to those embraced in the dramshop act are equally chargeable, he observed that it does not appear that Alcamo's would have benefitted financially from greater consumption of alcoholic beverages at the wedding reception.

Justice Moody, joined by Justice Williams, dissenting, agreed that the dramshop provision of the Liquor Control Act is restricted in its application to those persons who are retailers of beer, wine, or spirits for consumption on the premises and to Specially Designated Merchants. However, he would find that the operation conducted by Alcamo's clearly constituted a retailing of beer on the premises for consumption as a matter of law. He would hold a catering hall subject to liability which

(1) permits the consumption of intoxicating beverages on its premises, (2) supplies any of those intoxicating beverages for a specific fee or as an accomodation for other rental considerations, and (3) provides a person to dispense such beverages. Alcamo's furnished the beer that was consumed on the night in question, charged the lessees of the hall for the beer and handling expenses and furnished the bartender who dispensed the beer at the hall. The rental hall directly dispensed to consumers an alcoholic beverage through its bartender for remuneration and thus its operation took on all the attributes of a retailing establishment. It makes no difference that all the remuneration may not be directly related to the volume of intoxicants consumed. The statutory duty remains. Although Alcamo's was not a properly licensed or bonded retailer of alcoholic beverages, it would be patently unjust to permit catering establishments which directly dispense alcohol to escape potential dramshop liability because they fail to procure proper licenses and bonding.

66 Mich App 82; 232 NW2d 205 (1975) reversed.

### Opinion of the Court

1. STATUTES—CONSTRUCTION.

Doubtful or ambiguous provisions of a statute are construed not in isolation but with reference to and in the context of related provisions in order to give effect to the plain legislative intent of the whole enactment.

2. INTOXICATING LIQUOR—DRAMSHOP ACT—CIVIL LIABILITY—LICENSES.

A dramshop action may be brought against those charged in the Liquor Control Act with a duty to refrain from supplying liquor to minors and intoxicated persons, which is a class restricted to licensed retailers of beer, wine or spirits for consumption on the premises and Specially Designated Merchants (MCL 436.22; MSA 18.993).

3. INTOXICATING LIQUOR—DRAMSHOP ACT—CIVIL LIABILITY—LICENSES.

Persons maintaining operations tantamount to those of licensed retailers of alcohol for consumption on the premises but who have failed to obtain or maintain the license required by the Liquor Control Act are equally chargeable under the dramshop act as licensees (MCL 436.22; MSA 18.993).

4. INTOXICATING LIQUOR—DRAMSHOP ACT—CIVIL LIABILITY—LICENSES —RENTAL HALL.

A rental hall which procured keg beer for its lessee to serve at a wedding reception and which assisted with dispensing of alco-

holic beverages privately provided by the celebrants in a social setting, but which was neither a retailer of beer, wine or spirits for consumption on the premises nor a specially designated liquor merchant, was not engaged in the type of liquor trafficking contemplated in the dramshop provisions of the Liquor Control Act (MCL 436.22; MSA 18.993).

CONCURRING OPINION BY LEVIN, J.

5. INTOXICATING LIQUOR—DRAMSHOP ACT—CIVIL LIABILITY—LICENSES —RENTAL HALL.

*A rental hall which procured keg beer for its lessee to serve at a wedding reception and which assisted with dispensing of alcoholic beverages privately provided by the celebrants in a social setting, but which was neither a retailer of beer, wine or spirits for consumption on the premises nor a specially designated liquor merchant and which would not have financially benefitted from greater consumption of alcohol at the wedding reception is not liable under the dramshop provisions of the Liquor Control Act (MCL 436.22; MSA 18.993).*

DISSENTING OPINION BY BLAIR MOODY, JR., J.

WILLIAMS, J.

See headnote 2.

6. INTOXICATING LIQUOR—DRAMSHOP ACT—CIVIL LIABILITY—LICENSES —RENTAL HALL.

*An operation conducted by a rental hall constituted a retailing of beer for consumption on the premises as a matter of law, and thus made it liable for damages under the dramshop provisions of the Liquor Control Act, where the rental hall furnished beer which was consumed by guests of the lessees at the hall, charged the lessees of the rental hall for the beer and handling expenses, and furnished the bartender who dispensed the beer at the rental hall; the rental hall directly dispensed to consumers an alcoholic beverage through its bartender and thus its operation took on all the attributes of a retailing establishment; it makes no difference that all the remuneration may not be directly related to the volume of intoxicants consumed (MCL 436.22; MSA 18.993).*

7. INTOXICATING LIQUOR—DRAMSHOP ACT—CIVIL LIABILITY—LICENSES —RENTAL HALL.

*It would be patently unjust to permit "catering" establishments which directly dispense alcohol to escape potential dramshop*

*liability because they fail to procure proper liquor licenses and
bonding (MCL 436.22; MSA 18.993).*

*LaBarge, Zatkoff & Dinning, P. C.* (by *Thomas A.
Dinning* and *Ronald H. Greve); Stewart, O'Reilly,
Cornell, Donovan, Lascoe & Rancilio; Donald Z.
Ricard;* and *Schwartz & Juneau* for plaintiffs.

*Glime, Daoust & Wilds (Herbert J. Rusing* and
*Denis R. Leduc,* of counsel) for defendants Alca-
mo's Holiday House and Alcamo's Hall, Inc.

RYAN, J. Defendant Alcamo's Holiday House and
Alcamo's Hall, Inc., known hereafter as Alcamo's,
appeals from the order of the Court of Appeals
reversing the trial court's grant of summary judg-
ment which dismissed a complaint seeking dam-
ages under § 22[1] of the Michigan Liquor Control
Act.[2]

The facts are undisputed. Alcamo's is a private
rental hall located in Mt. Clemens, Michigan. It is
available for private parties, banquets, and wed-
ding receptions.

On the evening of June 11, 1971 a private
wedding reception was held at the hall. The lease
of the hall provided that alcoholic beverages were
not to be sold on the premises unless the necessary
licenses were obtained *by the lessees.* The alcoholic
beverages which were consumed at the reception
were all privately provided by the celebrants, with
the exception of keg beer that was obtained
through Alcamo's at retail cost plus a fee for
handling, tapping and setting up the keg. Alcamo's
provided a waiter and the facilities for the dispen-
sation of the beverages at the reception.

---

[1] MCLA 436.22; MSA 18.993.

[2] MCLA 436.1 *et seq.;* MSA 18.971 *et seq.*

Among the guests at the gathering were the defendants Patrick and Lillian Bieniek. During the course of the evening Patrick Bieniek consumed an amount of alcoholic beverage. In the early morning hours of June 12, after leaving the reception, Patrick Bieniek drove his automobile broadside into another automobile resulting in the death of three of its occupants, including James D. Guitar, the plaintiff's decedent, and serious injury to a fourth.

The question for decision is whether Alcamo's, under the presented facts, is subject to liability under § 22 of the Michigan Liquor Control Act effective at the date of the incident.[3] We hold it is not.

Resolution of the stated issue requires our decision as to the meaning of the word "person" as used by the Legislature to define the class of persons who may be liable under the so-called "dramshop"[4] provision of § 22 of the Michigan Liquor Control Act.

The word "person" is defined in the Liquor Control Act as:

"[A]ny person, firm, partnership, association or corporation." MCLA 436.2k; MSA 18.972(11).

"The words and phrases used in this act shall be construed as defined in this section and in sections 2a to 2w, inclusive, *unless the context shall otherwise require.*" MCLA 436.2; MSA 18.972. (Emphasis supplied.)

---

[3] MCL 436.22 was thereafter amended by 1972 PA 196, imd. eff. June 29.

[4] The term "dramshop" is a colloquialism well known to the bench and bar of this state as having reference to provisions in state statutes imposing vicarious civil liability upon a designated class of persons for dispensing liquor under certain prohibited circumstances. In the instant case the term "dramshop" is colloquially applied to the civil liability provisions of § 22 of the Michigan Liquor Control Act.

Our inquiry necessarily focuses upon what the context "may otherwise require".

The plaintiffs urge us to adopt a broad construction of the act in defining the class of person who may be liable under § 22 in view of the legislation's remedial purpose. Defendant Alcamo's, on the other hand, prefers a much narrower construction in view of the somewhat penal character of the statute and its imposition of civil liability in derogation of common law. We need not employ either tack, however, since the intent of the Legislature regarding the class of person to whom liability extends under the "dramshop provisions" of the act is readily ascertainable from an analysis of the context in which reference to such persons is made.

In determining the meaning of the language in question we are obedient to the settled principle that doubtful or ambiguous provisions of a statute are construed not in isolation but with reference to and in the context of related provisions, in order to give effect to the whole enactment.[5] When, as here, reference to several related provisions of the statute makes manifest the legislative intent in employing specific language, it is outside our province to assign to such language, in the name of broad or narrow construction, a meaning at variance with the plain intent.[6]

The essentially operative language of § 22 provides:

---

[5] *Taylor v Auditor General,* 360 Mich 146; 103 NW2d 769 (1960); *Hartwick v Sanilac Drain Commissioner,* 338 Mich 624; 62 NW2d 596 (1954); *Smith v City Commission of Grand Rapids,* 281 Mich 235; 274 NW 776 (1937); *Smith v Wayne County Sheriff,* 278 Mich 91; 270 NW 227 (1936).

[6] As Mr. Justice CARR said in *Jones v Grand Ledge Public Schools,* 349 Mich 1, 11; 84 NW2d 327 (1957):

"It is not within the province of. this Court to read therein a mandate that the legislature has not seen fit to incorporate. Our duty is to apply the law as we find it."

"[A person injured in his person or property] shall
have a right of action in his or her name against the
*person* who shall by such selling or giving of any such
liquor have caused or contributed to the intoxication of
said person or persons or who shall have caused or
contributed to any such injury * * * ." (Emphasis sup-
plied.)

We must decide whether Alcamo's is a "person"
within the meaning of the foregoing paragraph. To
do so, we are required to construe a section of a
statute which is somewhat inartfully drawn and
whose provisions are poorly organized. Our effort
at construing the statute is almost reduced to the
schoolroom diagramming and parsing exercises of
a bygone day. An analytical perusal of § 22 of the
Michigan Liquor Control Act, as it was effective at
the date of the incident,[7] is essential to an ade-
quate understanding of the proper breadth or
scope of the liability provisions therein.

Because we are persuaded it will be of substan-
tial assistance to the reader, we reluctantly bur-
den the case report by reproducing the former
entire § 22 in the margin just as it appeared in our
former statute.[8]

The section begins with language which estab-
lishes the procurement of a bond as a condition

---

[7] Section 22 was subsequently amended, effective June 29, 1972 by
1972 PA 196.

[8] "Sec. 22. Form of bond. As a condition precedent to the approval
and granting of any license, the following persons shall make, execute
and deliver to the commission a bond or bonds, said bond or bonds to
be executed by any surety company or companies authorized to do
business in the state of Michigan or in the discretion of the commis-
sion by approved personal surety running to the people of the state of
Michigan in the following amounts:

"(1) Manufacturers, a bond or bonds in the sum of $5,000.00;
wholesalers, a bond or bonds in the sum of $2,500.00; warehousemen,
a bond or bonds in the sum of $2,500.00; specially designated distribu-
tors and specially designated merchants, a bond or bonds in the sum
of $1,000.00, for the faithful performance of the conditions of the
license issued and compliance with the provisions of this act; any
manufacturer who has given the bond or bonds herein provided for

shall not be required to give any additional bond or bonds for any warehouse he may own or operate.

"(2) Retailers of beer or wine for consumption on the premises, a bond or bonds in the sum of not less than $3,000.00 nor more than $5,000.00, in the discretion of the commission; retailers of spirits for consumption on the premises, a bond or bonds in the sum of not less than $5,000.00 nor more than $10,000.00, in the discretion of the commission, conditioned that any such retailer or specially designated merchant will not directly or indirectly, by himself, his clerk or agent or servant at any time sell, furnish, give or deliver any alcoholic liquor to a minor except as provided in this act, nor to any adult person whatever who is at the time intoxicated, and that he will pay all damages actual and exemplary that may be adjudged to any person or persons, including those hereinafter mentioned, for injuries inflicted upon him or them either in person or property or means of support or otherwise, by reason of his selling, furnishing, giving or delivering any such alcoholic liquor.

"The bond required by this act shall be substantially in the following form:

" 'Know all men by these presents, that we .......... as principal and .......... as surety are held and firmly bound unto the people of the state of Michigan in the sum of .......... dollars to the payment thereof well and truly to be made we bind ourselves, our heirs, executors, administrators, successors and assigns firmly by these presents.

"Sealed with our seals this .......... day of .......... A.D. 19...

"Whereas, the above named principal purposes to carry on the business of .......... at .......... in the county of .........., state of Michigan.

"Whereas, the said principal has covenanted and agreed and doth hereby covenant and agree as follows, to wit: That he will not directly or indirectly, by himself, his clerk, agent or servant at any time, sell, furnish, give or deliver any spirituous, malt, brewed, fermented or vinous liquor, any mixed liquor or any mixture or compound a part of which is spirituous, malt, brewed, fermented or vinous liquor to a minor, nor to any adult person whatever who is at the time intoxicated, and that he will pay all damages actual and exemplary that may be adjudged to any person or persons for injuries inflicted upon him or them either in person or property or means of support or otherwise by reason of his selling, furnishing, giving or delivering any such liquors. Now, the condition of this obligation is such that if the said principal shall well and truly keep and perform all and singular the foregoing covenants and agreements and shall pay any judgment for actual or exemplary damages which may be recovered against him in any court of competent jurisdiction and all fines and costs that may be imposed upon him for violations of this act, then this obligation shall be void and of no effect; otherwise, the same shall be in full force and effect.

"Signed and sealed in the presence of

................................................................ L. S.

................................................................ L.S.' "

precedent to the approval and granting of any license to sell intoxicating liquors. Although having no direct applicability to the issue at hand, the first several provisions of § 22 establish the context in which the "persons" upon whom dramshop liability is imposed later in the section are identified.

"Sec. 22. As a condition precedent to the approval and granting of any license, the following *persons* shall make, execute and deliver to the commission a bond or bonds, said bond or bonds to be executed by any surety company or companies authorized to do business in the

---

"The liquor control commission shall be empowered to embody such other provisions in the bond as it shall deem necessary.

"Every wife, husband, child, parent, guardian or other persons who shall be injured in person or property, means of support or otherwise, by an intoxicated person by reason of the unlawful selling, giving or furnishing to any such persons any intoxicating liquor, shall have a right of action in his or her name against the person who shall by such selling or giving of any such liquor have caused or contributed to the intoxication of said person or persons or who shall have caused or contributed to any such injury, and the principal and sureties to any bond given under this law shall be liable, severally and jointly, with the person or persons selling, giving or furnishing any spirituous, intoxicating or malt liquors as aforesaid, and in any action provided for in this section, the plaintiff shall have the right to recover actual and exemplary damages in such sum not less than $50.00 in each case as the court or jury may determine, but no surety shall be liable in excess of the amount of the bond required by this act. Any action shall be instituted within 2 years after the happening of the event. In case of the death of either party, the action or right of action given in this section shall survive to or against his or her executor or administrator, and in every such action by a husband, wife, child or parent, the general reputation of the relation of husband and wife or parent and child shall be prima facie evidence of such relation, and the amount so recovered by either husband or wife or parent and child shall be his or her sole and separate property. Such damages together with the costs of suit shall be recovered in an action of trespass on the case before any court of competent jurisdiction; and in any case where the parent shall be entitled to any such damages, either the father or mother may sue alone therefor, but recovery by one of such parties shall be a bar to suit brought by the other. The bond required by this act shall continue from year to year unless sooner cancelled by the surety. No surety shall cancel any bond except upon 10 days' written notice to the commission."

state of Michigan or in the discretion of the commission by approved personal surety running to the people of the state of Michigan, in the following amounts:

"1. Manufacturers, a bond or bonds in the sum of $5,000.00; wholesalers, a bond or bonds in the sum of $2,500.00; warehousemen, a bond or bonds in the sum of $2,500.00; specially designated distributors and specially designated merchants, a bond or bonds in the sum of $1,000.00, for the faithful performance of the conditions of the license issued and compliance with the provisions of this act; any manufacturer who has given the bond or bonds herein provided for shall not be required to give any additional bond or bonds for any warehouse he may own or operate." (Emphasis added.)

Therefore, in order to obtain a liquor license, manufacturers,[9] warehousemen,[10] specially designated distributors,[11] and specially designated merchants[12] are identified as the persons who must secure a bond in conformity with the above section.

There follows in the next succeeding paragraph what are essentially two distinct provisions made applicable to the same class of persons; that is, retailers[13] of beer or wine, or spirits, for consump-

---

[9] "Manufacturer" means any person engaged in the manufacture of any alcoholic liquor, and among others, includes a distiller, a rectifier, a wine maker, and a brewer. MCLA 436.2j; MSA 18.972(10).

[10] "Warehouseman" means any licensee authorized by the commission to store alcoholic beverages, but prohibited from making sales or deliveries to retailers unless such licensee is also the holder of a wholesaler or manufacturer license issued by the commission. MCLA 436.2m; MSA 18.972(13).

[11] "Specially designated distributor" means a person engaged in an established business licensed by the commission to distribute alcoholic liquor other than wine under 16 percent alcohol by volume and beer in the original package for the commission for consumption off the premises. MCLA 436.2p; MSA 18.972(16).

[12] "Specially designated merchant" means any person to whom the commission grants a license to sell beer and/or wine at retail for consumption off the premises of such licensed place. MCLA 436.2q; MSA 18.972(17).

[13] "Retailer" means any person who customarily sells to the con-

tion on the premises. First, liability bonding provisions are established for on-premises beer, wine and liquor retailers and, second, there is imposed upon such retailers, as well as specially designated merchants, the duty to refrain from supplying alcoholic liquor to a minor or intoxicated adult and liability to respond in damages for doing so, if "such" person should, by reason of an unlawful supplying, injure another in the latter's "person or property or means of support or otherwise". It reads:

"2. *Retailers of beer or wine for consumption on the premises,* a bond or bonds in the sum of not less than $3,000.00 nor more than $5,000.00, in the discretion of the commission; *retailers of spirits for consumption on the premises,* a bond or bonds in the sum of not less than $5,000.00 nor more than $10,000.00 in the discretion of the commission, conditioned that any *such retailer or specially designated merchant* will not directly or indirectly, by himself, his clerk or agent or servant at any time sell, furnish, give or deliver any alcoholic liquor to a minor except as provided in this act, nor to any adult person whatever who is at the time intoxicated, and that *he* will pay all damages actual and exemplary that may be adjudged to any person or persons, including those hereinafter mentioned, for injuries inflicted upon him or them either in person or property or means of support or otherwise, by reason of his selling, furnishing, giving or delivering any such alcoholic liquor." (Emphasis supplied.)

The final words of the foregoing, beginning with "and that he will pay all damages", constitute the beginning of the statutorily established rights and liabilities commonly known as the "dramshop" legislation, with the persons in whose favor the

sumer under such rules as the commission may establish. MCLA 436.2m; MSA 18.972(13).

cause of action is created being described in part as "including those hereinafter mentioned", thus suggesting that later provisions must be read in conjunction with the foregoing.[14]

There next appears in § 22 a reproduction of the entire form of the bond made mandatory by the antecedent paragraphs. This break in the continuity of the relevant liability portions of § 22 has been primarily responsible for the apparent confusion at issue today.

The confusion arises when one attempts to read the language of dramshop liability which follows the bond form as though it stood alone, rather than in the context of the companion liability language which precedes the bond form paragraph. Although the bonding and civil liability provisions of § 22 are recited in a somewhat cumbersome and poorly organized fashion, it is evident that in order to construe the meaning of the dramshop liability provisions of the act, the concluding paragraph of § 22 must be read with reference to the earlier liability language. We have observed as much on at least two prior occasions when construing related liability provisions of § 22. *Maldonado v Claud's Inc,* 347 Mich 395, 403–404; 79 NW2d 847 (1956); *Juckniess v Supinger,* 323 Mich 566, 571–572; 36 NW2d 148 (1949).

---

[14] The paragraph in relevant part reads:

"and that he will pay all damages actual and exemplary that may be adjudged to any person or persons, *including those hereinafter mentioned* * * * ". (Emphasis supplied.)

Subsequent to the model bond the liability provision continues, enumerating the persons specifically referred to in the former paragraph.

"Every wife, husband, child, parent, guardian or other persons who shall be injured in person or property, means of support or otherwise, by an intoxicated person by reason of the unlawful selling, giving or furnishing * * * ".

Such reference is a clear manifestation of the legislative intent to integrate the two paragraphs rather than construe them in isolation.

In *Maldonado, supra,* p 404, this Court noted:

"that the basis of the right of action created by the legislature is 'unlawful selling, giving, or furnishing to any such persons' intoxicating liquors. The term 'such persons' must be deemed to have reference to those to whom sales may not lawfully be made. The emphasis is obviously on unlawful transactions of the character mentioned. A sale to a minor falls within the category. The term 'such selling' must be taken to mean selling in violation of the statute."

Likewise, in this case, those *against whom the action may be brought* has reference to those charged with the duty to refrain from supplying liquor to minors and intoxicated persons. When in the concluding paragraph of § 22 it is stated that there shall exist "a right of action * * * *against the person* who shall by *such* selling or giving of any liquor have caused or contributed to the intoxication of said person" the class of persons to be charged is to be identified by construing that language together with the earlier paragraph delineating those upon whom the duty is imposed to refrain from *"such* selling or giving of any liquor"; when so construed, the class of persons to be charged is obviously "any such retailer or specially designated merchant".

In summary, then, in order to properly identify the person or class of persons upon whom liability may be imposed under the civil liability or "dramshop" provision of § 22, the paragraph immediately preceding and that immediately succeeding the bond form language must be read together as though uninterrupted. When that is done it is seen that the paragraph preceding the bond language of § 22 establishes a legal duty with which a certain

class of liquor traffickers is to be charged,[15] while the paragraph succeeding the bond language describes the person entitled to initiate an action for damages[16] and the procedural limitation upon such action.[17]

We disagree with plaintiff's view that the concluding paragraph of § 22 was intended to expand the class of persons who may be vicariously liable. We hold instead that liability is limited to persons within the class of liquor traffickers specifically delineated in the dramshop provision of the act, a class consisting of licensed retailers of beer, wine or spirits for consumption on the premises and Specially Designated Merchants.

It is implicit of course that "persons" maintain-

---

[15] "[C]onditioned that *any such retailer* or *specially designated merchant* will not directly or indirectly, by himself, his clerk or agent or servant at any time sell, furnish, give or deliver any alcoholic liquor to a minor except as provided in this act, nor to any adult person whatever who is at the time intoxicated, and that he will pay all damages actual and exemplary that *may be adjudged to any person or persons, including those hereinafter mentioned*". (Emphasis supplied.)

[16] *"Every wife, husband, child, parent, guardian or other persons who shall be injured in person or property, means of support or otherwise,* by an intoxicated person by reason of the unlawful selling, giving or furnishing to any such persons any intoxicating liquor, shall have a right of action in his or her name against the person who shall by such selling or giving of any such liquor have caused or contributed to the intoxication of said person or persons or who shall have caused or contributed to any such injury * * * ". (Emphasis supplied.)

[17] "Any action shall be instituted within 2 years after the happening of the event. In case of the death of either party, the action or right of action given in this section shall survive to or against his or her executor or administrator, and in every such action by a husband, wife, child or parent, the general reputation of the relation of husband and wife or parent and child shall be prima facie evidence of such relation, and the amount so recovered by either husband or wife or parent and child shall be his or her sole and separate property. Such damages together with the costs of suit shall be recovered in an action of trespass on the case before any court of competent jurisdiction; and in any case where the parent shall be entitled to any such damages, either the father or mother may sue alone therefor, but recovery by one of such parties shall be a bar to suit brought by the other."

ing operations tantamount to those embraced within the foregoing class but who have failed to obtain or maintain the required licensing are equally chargeable under the "dramshop" provision of the act.

In the instant case it is uncontroverted that while Alcamo's procured keg beer for its lessee and even assisted with the dispensing of alcoholic beverages, it was neither a retailer of beer or wine, or spirits, for consumption on the premises, nor a Specially Designated Merchant. Moreover, the facts do not lend themselves to the conclusion that the operation of the rental hall by Alcamo's was at all similar to the type of liquor trafficking contemplated in the "dramshop" provisions of § 22 of the Liquor Control Act.

It is evident from a reading of the narrow and restrictively drawn civil liability provisions of § 22 that the Legislature intended to impose a special legal duty upon a group of retailers who the Legislature may have believed needed additional encouragement to subject their immediate pecuniary interests to the ultimate welfare of their patrons and society as a whole. That encouragement has been made to consist in part of the resultant vicarious liability.

In the case at hand, the role of Alcamo's does not fit logically within the manifest legislative purpose. Whereas the class of retailers specifically named in § 22 may be directly proprietorily motivated to dispense "that additional drink" which is "one too many", such motivation is totally inapplicable to a social setting in which the alcohol is supplied as a mere social amenity.

As such, the instant and similar situations lie outside of the purview of "dramshop" liability. The Legislature, in balancing social and financial inter-

ests, designated a specific group of "persons" to whom the civil liability provisions would apply. Those "persons" not literally or implicitly charged with the duty or condition imposed under § 22 of the Michigan Liquor Control Act are consequently not subject to liability thereunder.

Accordingly, we reverse the decision of the Court of Appeals and reinstate the summary judgment of dismissal entered on behalf of Alcamo's.

KAVANAGH, C. J., and LEVIN, COLEMAN, and FITZGERALD, JJ., concurred with RYAN, J.

LEVIN, J. *(concurring)*. I agree with the Court's construction of the dramshop act, and with the decision that plaintiffs' complaints should be dismissed. I have therefore signed the opinion of the Court.

The opinion states:

"It is implicit of course that 'persons' maintaining operations tantamount to those embraced within the foregoing class but who have failed to obtain or maintain the required licensing are equally chargeable under the 'dramshop' provisions of the act."

It does not appear that Alcamo's would have financially benefitted from greater consumption of alcoholic beverages at the wedding reception. The fee for setting up a keg of beer was $12 or less and the charge for the waiter's services was not related to the consumption of such beverages.

BLAIR MOODY, JR., J. *(dissenting)*. The issue presented for this Court's decision is whether § 22 of the Michigan Liquor Control Act (dramshop provision) applies to the operation of Alcamo's Holiday House and Alcamo's Halls Incorporated.

The majority disagrees with the Court of Appeals liberal construction of the dramshop provision and, more specifically, those "persons" held subject to liability under that provision.

I concur for three reasons with the analysis of the majority that the concluding paragraph of § 22(2) restricts the application of the dramshop provision to those "persons" who are retailers of beer, wine or spirits for consumption on the premises and to Specially Designated Merchants.

First, this conclusion is dictated by a literal construction of the term "person", as found in a prior paragraph in the same section, to define those subject to liability.

Second, such a construction is fortified by the fact the dramshop provision, when reenacted, was not republished as a separate and distinct provision of the Liquor Control Act. The dramshop provision thus became interwoven with the bonding provisions vis-à-vis those "persons" included:

"and the principal and sureties of any bond given under this law shall be liable, severally and jointly, with the *person or persons* selling, giving * * * intoxicating * * * liquors as aforesaid". (Emphasis added.)

This provision pinpoints potential liability to those specific persons selling or furnishing intoxicating beverages, together with their principals and sureties.

Finally, if this Court were to adopt the Court of Appeals construction of the term "persons", it is reasonable to assume that attempts would be made to extend liability to persons other than retailers. Conceivably, private parties would be held subject to liability for selling, giving, or furnishing alcohol to minors or to visibly intoxicated persons. While I agree that remedial legislation

requires liberal interpretation, this extension of potential liability would go far beyond the legislative intent of the existing dramshop provision.

However, I dissent from the conclusion of my colleagues that Alcamo's was not a *retailer.* The operation conducted by Alcamo's clearly constituted a retailing of beer for consumption on the premises as a matter of law.

According to the Liquor Control Act a "retailer" is defined as follows:

" 'Retailer' means any person who customarily sells to the consumer, under such rules as the commission may establish." MCLA 436.2m; MSA 18.972(13).

Alcamo's, in its answer to the amended complaint, claimed that it was a "catering hall engaged in the catering business and not engaged in selling alcoholic beverages". The depositions reveal three critical facts:

(1) Alcamo's furnished the beer that was consumed on the night in question;

(2) Alcamo's charged the lessees of the hall for the beer and handling expenses; and,

(3) *Alcamo's furnished the person (bartender) who dispensed the beer at the hall.*

Under the majority's own artful and narrow construction of the dramshop provision, it is clear that Alcamo's was a retailer. As one aspect of its catering business, Alcamo's directly dispensed to consumers an alcoholic beverage through its bartender for commercial remuneration and thus its operation took on all the attributes of a retailing establishment. It makes no difference that all the remuneration may not be directly related to the volume of intoxicants consumed. The statutory duty remains.

Alcamo's was not a properly licensed or bonded

vendor-retailer of alcoholic beverages. However, it would be patently unjust to permit so-called "catering" establishments which directly dispense alcohol to escape potential dramshop liability because they fail to procure proper licenses and bonding. This Court would then be encouraging de facto retailing establishments to eschew proper licensing and bonding in order to avoid incurring dramshop liability.

The majority apparently agrees with this policy proposition:

"It is implicit of course that 'persons' maintaining operations tantamount to those embraced within the foregoing class but who have failed to obtain or maintain the required licensing are equally chargeable under the 'dramshop' provision of the act."

Thus, I would hold a catering hall subject to liability which (1) permits the consumption of intoxicating beverages on its premises, (2) supplies any of those intoxicating beverages for a specific fee *or* as an accommodation for other rental considerations, and (3) *provides a person to dispense such beverages.* When combined, such activities are tantamount to those of a retailer and are subject to the dramshop provision of the Liquor Control Act.

Accordingly, while I concur in the majority's analysis, I dissent from my colleagues' conclusion. I would affirm the conclusion of the Court of Appeals. For the reasons stated herein, I would reverse the summary judgment granted the defendants and remand the cause for trial on the facts.

WILLIAMS, J., concurred with BLAIR MOODY, JR., J.