McGUIRE v SANDERS

Docket No. 251950. Submitted August 3, 2005, at Detroit. Decided November 15, 2005, at 9:10 a.m.

David W. McGuire brought a dramshop action in the Wayne Circuit Court against Deanna L. Sanders; Garter Belt, Inc., doing business as Leggs Lounge; and Hamilton's Henry VIII Lounge, Inc., doing business as Hamilton Placement, following an automobile accident in which he was injured as a passenger while Sanders was driving. Hamilton's Henry VIII asserted that Hamilton Placement was merely a payroll service that paid the employees of several bars, including Leggs Lounge, the establishment at which Sanders had allegedly become intoxicated before the accident. The court, Cynthia D. Stephens, J., granted summary disposition for Hamilton's Henry VIII without prejudice. The plaintiff subsequently moved to re-add Hamilton's Henry VIII as a defendant, and presented evidence that indicated that employees of Hamilton's Henry VIII may have served Sanders at Leggs Lounge. The court granted the plaintiff's motion. Hamilton's Henry VIII appealed by leave granted.

The Court of Appeals *held*:

Given the unique facts of this case, the trial court did not err by determining that Hamilton's Henry VIII could be subject to dramshop liability. The dramshop statute, MCL 436.1801(3), provides a right of action against a retail licensee that sells, gives, or furnishes alcohol to a visibly intoxicated person, which sale results in injury. The statute does not limit liability to the holder of the liquor license for the establishment at which the illegal sale was made. Hamilton's Henry VIII is also a retail licensee. Pursuant to the plain language of the statute, if the plaintiff were to prevail on the factual issue whether employees of Garter Belt were in fact employees or agents of Hamilton's Henry VIII, or both entities, the plaintiff could show that the agent or servant of Hamilton's Henry VIII made a sale in violation of the statute, subjecting Hamilton's Henry VIII to liability. It does not matter that the alcohol was sold at Leggs Lounge rather than the establishment for which Hamilton's Henry VIII is listed as the retail licensee; if the alcohol was sold by an agent of Garter Belt who was also an

agent of Hamilton's Henry VIII, either master could be a defendant in this case and the determinative question is which retail licensee was the person considered to be selling, giving, or furnishing the alcohol to Sanders. There is the possibility of a factual development supporting exertion by Hamilton's Henry VIII of control over the situation at Leggs Lounge through shared managers or employees.

Affirmed.

WHITE, P.J., concurring, stated that the case presents the unusual circumstance of a retail licensee who provided personnel to another licensee. The policy arguments in favor of the conflicting interpretation of the statute are equipoised, and the language of the statute supports affirmance.

INTOXICATING LIQUORS — DRAMSHOP ACTIONS — RETAIL LICENSEES — EMPLOYEES AND AGENTS.

The liability imposed by the dramshop statute on a retail licensee for the unlawful selling, giving, or furnishing of alcoholic liquor to a minor or a visibly intoxicated person is not limited to the retail licensee on whose premises the liquor was sold, but may also be imposed on another retail licensee that exerted control as a master over employees or agent at the selling premises through shared managers or employees (MCL 486.1801[3]).

*Larkin Legal Services, P.C.* (by *Joseph W. Larkin*), for David W. McGuire.

*Kallas & Henk PC* (by *Robert P. Hurley*) for Hamilton's Henry VIII Lounge, Inc.

Before: WHITE, P.J., and JANSEN and WILDER, JJ.

JANSEN, J. The circuit court entered an order granting plaintiff's motion to re-add Hamilton's Henry VIII Lounge, Inc., doing business as Hamilton Placement (collectively referred to as "Hamilton Placement"), as a party defendant in this dramshop action. This Court granted the application for leave to appeal filed by Hamilton Placement, and also granted a stay of proceedings. We affirm the trial court's order.

Plaintiff David McGuire alleged that on the evening of January 20, 2002, he and defendant Deanna Sanders (his girlfriend) went to the Leggs Lounge. McGuire further alleged that Sanders "became highly intoxicated, beyond the point of being visibly intoxicated, and yet was continued to be served alcoholic beverages." While driving plaintiff to their mutual residence at approximately 2:25 a.m. on January 21, 2002, Sanders drove into a ditch and the car rolled over. Her blood alcohol level was 0.187 grams per 100 milliliters. As a result of the accident, plaintiff was rendered a paraplegic.

Defendant Garter Belt, Inc., held the liquor license for Leggs Lounge. The Department of Consumer and Industry Services, now the Department of Labor and Economic Growth, listed the stockholder of Garter Belt as Betty Hamilton. However, John Hamilton signed the application for the liquor license. Betty and John Hamilton were the stockholders of Hamilton's Henry VIII Lounge, Inc. This corporation operated Hamilton's Henry VIII Lounge and had a liquor license for that establishment. John Hamilton, as president, had also signed for this license, and had filed a certificate of assumed name with the Department of Consumer and Industry Services indicating that Hamilton's Henry VIII Lounge, Inc., would use the assumed name of Hamilton Placement.

Hamilton Placement, originally named as a defendant in this action, asserted that it was a payroll service that paid various employees of several bars, including Leggs Lounge. Plaintiff provided an affidavit from Nadrah Switzer, the waitress who had served Sanders; she said that she worked at Leggs Lounge, but was paid by Hamilton Placement. Pay stubs bore the name of Hamilton Placement, not Leggs Lounge. Depositions

from numerous employees indicated that, on the basis
of the pay stubs, they would assume that Hamilton
Placement their employer was or they were confused
about who was their employer. Moreover, plaintiff es-
tablished that John Hamilton was involved in four
different topless bars, including Leggs Lounge and
Hamilton's Henry VIII Lounge, and that these estab-
lishments shared employees and managers. With regard
to Hamilton Placement's role, John Hamilton acknowl-
edged that it was the type of company hired by other
businesses to handle the paperwork for payroll, with-
holding, social security, etc. He further acknowledged
that if a person has several companies, that person
could have all the companies hire the same company to
do the paperwork, so that it is all in one place at one
time and each business does not have to separately
handle these matters. John Hamilton noted that the
distinction between Hamilton Placement and a com-
pany that might be hired for these purposes is "there's
no fees that way."

When Hamilton Placement first moved for summary
disposition, plaintiff asserted that the intermingling
created a situation in which the waitress was an em-
ployee of both Leggs Lounge and Hamilton Placement
subject to supervision by both. The lower court held
that plaintiff had not stated a claim against Hamilton
Placement, but left open the possibility that plaintiff
might be able to establish a "blending of the corpora-
tions" that would allow the claim against Hamilton
Placement to continue.

After further evidence was gathered, a hearing was
held to determine if Hamilton Placement should be
re-added as a defendant. At the hearing, the trial court
granted the motion to re-add Hamilton Placement as a
party, stating:

[T]he location at which the plaintiff [sic] allegedly consumed alcoholic beverages when she was visibly intoxicated was an establishment which was called the Garter Belt, Inc., doing business as Leggs Lounge which is a [liquor] licensee.

At this point the Court has been presented with evidence that in the light most favorable to the plaintiff, would indicate that persons who were arguably the employees of Henry the VIII Lounge doing business as Hamilton Placement, Inc., a [liquor] licensee, served alcoholic beverages to Ms. Sanders at the premises of Garter Belt, Inc. doing business as Leggs Lounge, a licensee.

\* \* \*

. . . [T]he statute . . . only applies to a licensee or an entity operating a bar without a license. I do not know at this point whether or not this plaintiff can establish . . . that the individuals who served the alcoholic beverages were de facto employees of Garter Belt or whether they were de facto employees of Henry the VIII Lounge doing business as Hamilton Placement.

I do know at this point that there is sufficient evidence to indicate . . . that the plaintiff has stated a cause of action . . . relative to whether . . . agents of a licensee [Hamilton Placement] furnished alcoholic beverages to Ms. Sanders while she was visibly intoxicated.

In fact, there is . . . a question of fact as to whose agents they were.

The trial court entered an order granting plaintiff's motion to re-add Hamilton Placement as a party. Hamilton Placement sought leave to appeal this order, and this Court granted the application for leave. This Court also granted Hamilton Placement's motion for a stay of proceedings pending appeal. The claim against Garter Belt was dismissed pursuant to stipulation, following the acceptance of a case evaluation pursuant to MCR 2.403(M)(1), and Garter Belt's cross-claim against Sanders was also dismissed.

On appeal, Hamilton Placement argues that the trial court erred in granting plaintiff's motion to reinstate this dramshop action against it when the evidence clearly demonstrates Hamilton Placement never made any sale of alcohol to the alleged intoxicated person, Sanders. Given the unique facts of this case, the trial court did not err in determining that Hamilton Placement could be subject to dramshop liability.

Resolution of this issue turns on the interpretation of a statute, which presents a question of law that is reviewed de novo on appeal. *Eggleston v Bio-Medical Applications of Detroit, Inc*, 468 Mich 29, 32; 658 NW2d 139 (2003); *Polkton Charter Twp v Pellegrom*, 265 Mich App 88, 98; 693 NW2d 170 (2005).

Dramshop liability is governed by MCL 436.1801, a provision of the Michigan Liquor Control Code, MCL 436.1101 *et seq*. The title of this act states in relevant part that it is intended "to prescribe liability for retail licensees under certain circumstances . . . ." MCL 436.1801 provides in pertinent part:

> (2) . . . *A retail licensee shall not directly or indirectly, individually or by a clerk, agent, or servant sell, furnish, or give alcoholic liquor to a person who is visibly intoxicated.*

> (3) Except as otherwise provided in this section, an individual who suffers damage or who is personally injured by a minor or visibly intoxicated person by reason of the unlawful selling, giving, or furnishing of alcoholic liquor to the minor or visibly intoxicated person, if the unlawful sale is proven to be a proximate cause of the damage, injury, or death, or the spouse, child, parent, or guardian of that individual, *shall have a right of action in his or her name against the person who by selling, giving, or furnishing the alcoholic liquor has caused or contributed to the intoxication of the person* or who has caused or contributed to the damage, injury, or death. . . .

\* \* \*

(8) There shall be a rebuttable presumption that a retail licensee, other than the retail licensee who last sold, gave, or furnished alcoholic liquor to the minor or the visibly intoxicated person, has not committed any act giving rise to a cause of action under subsection (3).

\* \* \*

(10) This section provides the exclusive remedy for money damages against a licensee arising out of the selling, giving, or furnishing of alcoholic liquor. [Emphasis added.]

Since both Garter Belt, Inc./Leggs Lounge and Hamilton's Henry VIII Lounge, Inc., are licensees, subsection 10 provides that the statute governs any liability they might have flowing from the serving of alcohol to Sanders.

The primary goal of judicial interpretation of statutes is to ascertain and give effect to the intent of the Legislature. *Neal v Wilkes*, 470 Mich 661, 665; 685 NW2d 648 (2004). The first criterion in determining intent is the specific language of the statute. *Halloran v Bhan*, 470 Mich 572, 577; 683 NW2d 129 (2004). If the plain and ordinary meaning of the language is clear and unambiguous, the Legislature is presumed to have intended the meaning expressed and judicial construction is normally neither necessary nor permitted. *Nastal v Henderson & Assoc Investigations, Inc*, 471 Mich 712, 720; 691 NW2d 1 (2005); *Toth v AutoAlliance Int'l, Inc*, 246 Mich App 732, 737; 635 NW2d 62 (2001).

The pertinent text of the statute is "shall have a right of action . . . against the person who by selling, giving, or furnishing the alcoholic liquor has caused or contributed to the intoxication of the person . . . ." MCL 436.1801(3). We conclude that the statute provides a right of action against the "person" who makes such a sale resulting in injury, MCL 436.1801(3), which would

be the retail licensee referred to in subsection 2. Pursuant to the plain language of the statute, if plaintiff were to prevail on the factual issue whether employees of Garter Belt were in fact employees of Hamilton Placement, a retail licensee, or were in fact employees or agents of both Hamilton Placement and Garter Belt, we conclude that plaintiff could show that the agent or servant of retail licensee Hamilton Placement made such a sale, subjecting Hamilton Placement to liability.

Hamilton Placement argues that, on the basis of *Guitar v Bieniek,* 402 Mich 152; 262 NW2d 9 (1978), only "the holder of the liquor license for the bar or tavern where the alleged illegal sale was made" can be subject to liability. In *Guitar,* the issue was whether dramshop liability could be imposed on a social hall under a precursor to the Michigan Liquor Control Code, the Michigan Liquor Control Act, former MCL 436.1 *et seq.,* and, more specifically, former MCL 436.22 before amendment by 1972 PA 196, which provided in pertinent part:

> [A person injured in his person or property] shall have a right of action in his or her name against the *person* who shall by such selling or giving of any such liquor have caused or contributed to the intoxication of said person or persons or who shall have caused or contributed to any such injury . . . . [Emphasis added.]

In *Guitar,* the owners of the social hall had rented the premises for a wedding, and secured a keg of beer for the celebrants at retail cost. *Id.* at 156. The Court concluded that the quoted language precluded a finding that the social hall could be held liable. *Id.* at 167-168. It determined that the context of the statute indicated that the Legislature intended the reference to "person" to mean those charged with the duty to refrain from supplying liquor to minors and intoxicated persons,

which the statute identified as "licensed retailers of beer, wine or spirits for consumption on the premises" and specially designated merchants (a category not at issue here) because they were the entities that were statutorily precluded from selling to a visibly intoxicated person. *Id.* at 165-166. The Court in *Guitar, supra* at 167, further stated:

> It is evident from a reading of the narrow and restrictively drawn civil liability provisions . . . that the Legislature intended to impose a special legal duty upon a group of retailers who the Legislature may have believed needed additional encouragement to subject their immediate pecuniary interests to the ultimate welfare of their patrons and society as a whole. That encouragement has been made to consist in part of the resultant vicarious liability.
>
> In the case at hand, the role of [the social hall] does not fit logically within the manifest legislative purpose. Whereas the class of retailers specifically named in § 22 may be directly proprietorily [sic] motivated to dispense "that additional drink" which is "one too many", such motivation is totally inapplicable to a social setting in which the alcohol is supplied as a mere social amenity.

The title of the current Michigan Liquor Control Code provides that the statute is intended to "prescribe liability for retail licensees . . . ." The language of the current statute does not say "licensed retailers of beer, wine or spirits for consumption on the premises." Rather, MCL 436.1801 of the Michigan Liquor Control Code refers to a "retail licensee" and imposes a duty on a retail licensee to refrain from selling liquor to visibly intoxicated persons. The statute then provides for liability against a "person who by selling, giving, or furnishing . . . alcoholic liquor has caused or contributed to the intoxication" of a visibly intoxicated person who causes injury. MCL 436.1801(3). The reasoning of *Guitar* would indicate that liability can only be imposed

on those charged with the statutory responsibility of not serving a visibly intoxicated person. Under the current statute, that would be "retail licensees," not "licensed retailers of beer, wine or spirits for consumption on the premises." Thus, we find that *Guitar* does not support a conclusion that Garter Belt is the only retail licensee subject to liability *because* it was the retailer for consumption on the premises. Instead, *Guitar* supports the proposition that the *"person"* referred to in the current statute is a retail licensee, which could include both Garter Belt and Hamilton Placement.

As the proprietor, seemingly, Garter Belt would be the entity that "the Legislature may have believed needed additional encouragement to subject [its] immediate pecuniary interests to the ultimate welfare of . . . patrons and society as a whole" and "may be directly proprietorily motivated to dispense 'that additional drink' which is 'one too many.' " *Guitar, supra* at 167. However, the intermingling of interests in this particular case could lead to the conclusion that both entities had a pecuniary interest. Moreover, the waitress who served Sanders could be viewed as the agent of both entities or retail licensees, and thus both entities could be viewed as contributing.

As plaintiff points out, further support for our finding that liability can go beyond the retail licensee on whose premises the liquor was sold on can be found in *Ray v Taft*, 125 Mich App 314; 336 NW2d 469 (1983). The issue was different in that the plaintiff had sued the coreceivers of the bar, not the owner/operator, and argued that the "true defendant" was the bar and that it had just been served in the wrong name. Under the previous statute, this Court found "that the *person* who sells, gives or furnishes the liquor is the true defendant in a dramshop action," not the place where the liquor is

furnished. *Id.* at 320. MCL 436.1801(3) allows an action against the person "selling, giving, or furnishing . . . ." We conclude that for purposes of liability, it does not matter that the liquor was sold at Leggs Lounge; if the liquor was sold by an agent of Garter Belt who was also an agent of Hamilton Placement, either master could be regarded as the "true defendant." The determinative question is which retail licensee was the person considered to be selling, giving, or furnishing the alcohol. Hamilton Placement and Garter Belt are retail liquor licensees, and there is a possibility of a factual development supporting that Hamilton Placement exerted some kind of control over the situation at Leggs Lounge through shared managers or employees.

For these reasons, we hold that Hamilton Placement could be subject to liability because it was a retail licensee whose alleged agent or employee allegedly caused or contributed to Sanders's intoxication.

We affirm the trial court's order allowing plaintiff to re-add Hamilton's Henry VIII Lounge, Inc., doing business as Hamilton Placement, as a party.

WILDER, J., concurred.

WHITE, P.J. (*concurring*). Dramshop cases have invariably involved claims against the retail licensee of the establishment where the allegedly intoxicated person (AIP) was served. This case presents the unusual circumstance of a licensee who provided personnel to another licensee, which personnel are alleged to have served the AIP.

Neither party cites cases that have held that the off-site licensee can, or cannot, be held liable under these circumstances. Further, to the extent that policy considerations inform our interpretation, the policy

arguments in favor of the conflicting interpretations are equipoised. Our only guidance is the language of the statute. I agree that the terms of the statute support affirmance.