TURNER *v.* SCHMIDT BREWING CO.

1. Contracts—Violation of Statute.

One who enters into a contract to perform services or furnish materials in violation of statute which has to do with public health, morals and safety and contains a penal provision for its violation cannot maintain an action to recover for such services or materials.

2. Intoxicating Liquors—Contracts—Violation of Statute.

Plaintiff who entered into contracts with brewer to alter and remodel beer gardens, owned by other vendors, licensed under liquor control act and purchasing beer from defendant, *held,* not entitled to recover for work, labor and materials furnished, such contract being in violation of liquor control act prohibiting a wholesaler from aiding or assisting other vendors financially (Const. 1908, art. 16, § 11, as amended November, 1932; Act No. 8, §§ 30, 31, 50, Pub. Acts 1933 [Ex. Sess.]).

3. Contracts—Public Policy—Enforcement.

Under contract void because against public policy, court will neither enforce it while executory nor relieve a party from loss by having performed it in part.

4. Intoxicating Liquors—Contracts—Violation of Statute— Ratification.

Recovery under contracts to alter and remodel beer gardens whose owners purchased beer from defendant brewing company, may not be permitted since such contracts were in violation of liquor control act even though defendant ratified the contract, as ratification does not legalize such a contract (Const. 1908, art. 16, § 11, as amended November, 1932; Act No. 8, §§ 30, 31, 50, Pub. Acts 1933 [Ex. Sess.]).

5. Appeal and Error—Motion to Dismiss at Close of Plaintiff's Case—Pleadings—Proofs.

On appeal from motion for judgment made at time plaintiff rested his case decision should be based on status of pleadings and proofs at time motion was made.

Appeal from Wayne; Toms (Robert M.), J. Submitted October 8, 1936. (Docket No. 48, Calendar No. 38,956.) Decided December 28, 1936.

Assumpsit by Edison E. Turner, doing business as E. E. Turner Construction Company, against Schmidt Brewing Company, a Michigan corporation, for sums due on construction contracts. Judgment for plaintiff. Defendant appeals. Reversed.

*Ralph B. Clark,* for plaintiff.

*Harry H. Mead,* for defendant.

NORTH, C. J. This suit at law in which plaintiff seeks to recover upwards of $2,000 from the defendant brewing company is for work, labor and materials furnished by plaintiff under alleged contracts between him and defendant in altering and remodeling a number of beer gardens which were purchasing beer from the defendant company. In each instance the brewing company was to be reimbursed by the proprietor of the place for the amount expended on the respective jobs. Plaintiff was solicited to do the work by salesmen of the defendant brewing company; and for certain jobs of this character done by plaintiff prior to those involved in this suit, the respective transactions were taken up with the president and executive manager of the brewing company in plaintiff's presence. As to each of these earlier jobs the president of the defendant company approved the transaction and plaintiff was subsequently paid therefor by defendant. But on the later jobs involved in the instant suit, plaintiff did not have the personal authorization of defendant's president and executive manager; instead plaintiff relied on the

assurance of defendant's salesmen, Knapp or Randall, that plaintiff's offer to do the work was acceptable. Defendant refused to pay for these later jobs. In plaintiff's suit, tried before the court without a jury, he had judgment and the defendant has appealed.

Among other defenses urged it is asserted in behalf of defendant that the work and materials for which plaintiff seeks recovery were furnished by plaintiff knowingly for the accomplishment of a purpose in violation of law and, therefore, plaintiff cannot recover. Act No. 8, Pub. Acts 1933 (Ex. Sess.), contains the following provisions:

"SEC. 30. Aid to vendor. No manufacturer, warehouseman or wholesaler shall aid or assist any other vendor by gift or loan of money or property of any description or other valuable thing, or by the giving of premiums or rebates, and it shall be unlawful for any vendor to accept the same.

"SEC. 31. Interest in business of vendor. No manufacturer, warehouseman or wholesaler shall have any financial interest, directly or indirectly, in the establishment, maintenance, operation or promotion of the business of any other vendor. No manufacturer, warehouseman or wholesaler, nor any stockholder thereof shall have any interest by ownership in fee, leasehold, mortgage or otherwise, directly or indirectly, in the establishment, maintenance, operation or promotion of the business of any other vendor.   *   *   *

"SEC. 50. Penalties. Any person, other than persons required to be licensed under this act, who shall violate any of the provisions of this act shall be guilty of a misdemeanor.

"Any licensee who shall violate any of the provisions of this act, or any rule or regulation of the commission promulgated hereunder, shall be guilty of a misdemeanor, punishable by imprisonment in

the county jail not more than six months or by a fine of not more than five hundred dollars, or both, in the discretion of the court.''

Under the express terms of the act, in part above quoted, the brewing company is both a ''wholesaler'' and a ''vendor'' and the proprietors of the beer gardens in which the work was done were also vendors. Each of them is required to be licensed under the act. For the purpose of decision herein it may be assumed, as plaintiff asserts, that he was employed by the defendant to do the work, or at least that performance of his services was ratified by the president and executive manager of the defendant company. But even so, review of this record discloses that plaintiff knew of the character of the services he was rendering, and the circumstances under which he furnished the work and material. He was bound to know that such transactions were in violation of the above-quoted statute. In other words it appears that plaintiff knew he was performing service in violation of law and for which violation a penalty was imposed. That plaintiff did have full knowledge of the nature of these dealings to which he was a party almost conclusively appears from his declaration wherein he claims defendant was indebted to him in the sum of $1,000 for taking part in the consummation or attempted consummation of just such deals. We quote from plaintiff's declaration:

''That the time expended by plaintiff in going with defendant's general agents, Randall and Knapp, at the suggestion of George Schmidt, president of the Schmidt Brewing Company, to several beer gardens where Schmidt Brewing Company sold beer, so that plaintiff might be present when there was submitted to the several beer garden proprietors a proposition

that if beer were purchased from the Schmidt Brewing Company, the Schmidt Brewing Company would cause to be accomplished any improvements in the premises of said beer gardens which the proprietors thereof might need, and cause same to be constructed by plaintiff and for which the Schmidt Brewing Company would pay plaintiff, the Schmidt Brewing Company never then intending to make such improvements but therein stalling plaintiff and stalling the beer garden proprietors so that during the interval Schmidt beer might be sold through the several beer gardens where such work was promised. For which time plaintiff claims damages in the sum of $1,000.''

Further the record discloses that the first four jobs of like character which plaintiff contracted to do were taken after plaintiff had first interviewed Schmidt and had obtained his approval; and in each of these cases plaintiff went to Schmidt for his pay and received it from Schmidt. The work and materials on subsequent jobs were furnished by plaintiff under such similar circumstances that he must have known of the brewery company's connection with each of such transactions. That he did fully understand the details of such transactions is indicated by plaintiff's testimony from which we quote:

''*Q.* You understood that this was a loan or advance from the brewery to pay for this work, and they were to collect 50 cents a half barrel to repay themselves?

''*A.* Mr. Knapp told me they collect 50 cents a half barrel for these jobs they did work on.

''I recall testifying this last summer that this was sort of a loan from the brewery to the licensee. * * * The way I understand, on 58 Cadillac Square (job) Mr. Knapp told me this; that they were not charging 50 cents a barrel. Whether they did or not, I don't know. Out at Hacienda on John R (another job), they were to pay 50 cents a barrel more until this

was paid out.   *   *   *   There were no other jobs where I understood any such arrangement was made." * * *

"*Q.* Let me refer to this: Do you recall having testified as follows: (Reading) '*Q.* Now, have you ever been present when either or both Randall and Knapp have told beer garden proprietors or the other licensees, that if they purchased beer from the Schmidt Brewing Company the brewing company would cause improvements to be made in their place?'

"*A.* Yes, sir.

"*Q.* (Continuing reading) '*A.* Yes, sir. A number of times.'

"*A.* Yes, sir.

"*Q.* (Continuing reading) '*Q.* Was that true of practically everybody that you mention in this suit? *A.* Practically everybody, yes.' Do you recall that?

"*A.* Yes, sir."

It is urged by appellee that the statutory provision was merely regulatory of the liquor traffic, but we think it goes further than a mere regulatory provision. The liquor control act was passed under express constitutional authority therefor (Const. of 1908, art. 16, § 11, as amended November, 1932) and in the exercise of the police power of the State. This statute clearly has to do with public health, morals and safety; and it contains a penal provision. One who enters into a contract to perform services or furnish materials in violation of such a statute cannot maintain an action to recover therefor.

"The general rule is well settled that, where statutes enacted to protect the public against fraud or imposition, or to safeguard the public health or morals, contain a prohibition and impose a penalty, all contracts in violation thereof are void." *Cashin* v. *Pliter,* 168 Mich. 386 (Ann. Cas. 1913 C, 697).

"It is also well settled that, if a contract be void as against public policy, the court will neither enforce it while executory, nor relieve a party from loss by having performed it in part." *Richardson* v. *Buhl,* 77 Mich. 632, 661 (6 L. R. A. 457).

See, also, *Detroit Salt Co.* v. *National Salt Co.,* 134 Mich. 103; *In Re Reidy's Estate,* 164 Mich. 167; *Edwards* v. *Ioor,* 205 Mich. 617 (15 A. L. R. 256); *Geister* v. *School District No. 1 of Roscommon Twp.,* 243 Mich. 357; *Groves* v. *Jones,* 252 Mich. 446. Nor can plaintiff successfully contend that by. reason of subsequent ratification he is entitled to recover.

"If the law prohibits a contract under criminal penalty or as a matter of general public policy or specifically denies the right to make it, of course it could not be legalized by ratification." *Fine Arts Corp.* v. *Kuchins Furniture Manfg. Co.,* 269 Mich. 277, 282.

The conclusion above indicated makes it unnecessary to pass upon other contentions of appellant. However, it may be noted that at the close of plaintiff's case no testimony had been introduced of Schmidt's authority to bind the defendant company; and on this ground defendant moved for a judgment at the time plaintiff rested. The motion was denied. Defendant claims the right of review on the record made at the close of plaintiff's case. In this connection see decision on rehearing of *Hilliker* v. *Jewell Oil & Gas Co.,* 277 Mich. 615.

Judgment entered in the circuit court is reversed, with costs to appellant.

Fead, Wiest, Butzel, Bushnell, Sharpe, and Toy, JJ., concurred. Potter, J., did not sit.