## LONGSTRETH v GENSEL

Docket Nos. 71465, 71503. Argued April 3, 1984 (Calendar No. 4).—
Decided November 27, 1985.

James H. Longstreth, for himself and as personal representative
for the estate of Jamie H. Longstreth, deceased, and Carol
Longstreth brought an action in the Midland Circuit Court
against Edward Gensel, Mrs. Edward Gensel, Samuel Langston,
and Myrna Langston, for damages arising from the death of
Jamie Longstreth, a minor, in an automobile accident following
his consumption of alcoholic beverages at a private wedding
reception hosted by the defendants. The court, David S. DeWitt,
J., granted summary judgment for the defendants, holding that
the statute which proscribes the selling or furnishing of alcohol
to minors applies only to licensees under the Liquor Control
Act, not to social hosts. The Court of Appeals, T. M. BURNS,
P.J., and BEASLEY and HANSEN, JJ., reversed and remanded to
the trial court in an opinion per curiam, holding that a cause of
action against social hosts exists under the act (Docket No.
62234). The defendants appeal.

In an opinion by Justice CAVANAGH, joined by Chief Justice
WILLIAMS and Justices LEVIN and BRICKLEY, the Supreme Court
*held:*

A civil cause of action exists for injuries or death caused by
the furnishing of alcoholic beverages to a person under twenty-
one years of age by a social host.

1. The sale or furnishing of alcoholic liquor to a person who
is less than twenty-one years of age is prohibited by the
constitution and the Liquor Control Act. The prohibition is not
limited to persons who are licensed to sell alcoholic liquor, but
applies to all persons, including social hosts. A person who
knowingly sells or furnishes alcoholic liquor to a person who is
less than twenty-one years of age, or who fails to make a
diligent inquiry as to whether the person is less than twenty-

REFERENCES FOR POINTS IN HEADNOTES
[1-4] Am Jur 2d, Intoxicating Liquors §§ 267-275.
Liability of person furnishing, on social occasion, intoxicating li-
quor, for negligent acts of intoxicated minor causing injury to
plaintiff. 53 ALR3d 1285.

one years of age, is guilty of a misdemeanor under § 33 of the Liquor Control Act. The section of the act prohibiting such sales is considered a penal statute. The proven violation of a penal statute is prima facie evidence of negligence.

2. A violation of § 33 creates only a rebuttable presumption of negligence. The alleged violation of § 33 in this case was sufficient to withstand a motion for summary judgment. Section 33 was intended to protect the interest of persons in being free from injury caused by the use of alcohol by persons under twenty-one. The interest exists as a result of legislative and constitutional provision. Section 33 was meant to protect against the harm resulting from such use of alcohol, *i.e.,* injury or death. Thus, a cause of action can exist on the basis of a violation of § 33. Even though the proven violation of § 33 would establish the plaintiffs' prima facie case, they must still establish proximate cause. On the basis of the record, it cannot be said that the plaintiffs' cause of action is precluded as a matter of law.

Affirmed.

Justice BOYLE, dissenting, stated that a cause of action for civil damages against noncommercial social hosts who unlawfully furnish alcohol to persons between the ages of eighteen and twenty-one to compensate for injury to the intoxicated person does not exist.

1. While violation of certain criminal or penal statutes has been found to provide evidence of negligence, such a finding is inappropriate in this case. In enacting the Liquor Control Act, the Legislature declined to provide a cause of action for injured intoxicants against commercial vendors of alcohol and restricted recovery to injured innocent victims. It would be anomalous to provide such a cause of action against social hosts.

2. The type of harm which occurred in this case was not the kind intended to be protected against by the 1978 constitutional amendment and the resultant statutory increase in the drinking age. Rather, the increase was primarily intended to protect innocent persons from alcohol-related traffic accidents involving inebriates between the ages of eighteen and twenty-one, to decrease drinking problems in schools, and to decrease the availability of liquor to persons under eighteen.

Justice RYAN, dissenting, concurred in the reasoning of part I of Justice BOYLE's opinion.

Justice RILEY took no part in the decision of this case.

125 Mich App 261; 335 NW2d 677 (1983) affirmed.

OPINION OF THE COURT

1. INTOXICATING LIQUORS — FURNISHING LIQUOR TO MINORS — SOCIAL HOSTS.

A civil cause of action exists for injuries or death caused by the furnishing of alcoholic beverages to a person under twenty-one years of age by a social host (MCL 436.33; MSA 18.1004).

2. INTOXICATING LIQUORS — CONSTITUTIONAL LAW — FURNISHING LIQUOR TO MINORS — SOCIAL HOSTS.

The sale or furnishing of alcoholic liquor to a person who is less than twenty-one years of age is prohibited by the constitution and the Liquor Control Act; the prohibition is not limited to persons who are licensed to sell alcoholic liquor, but applies to all persons, including social hosts (Const 1963, art 4, § 40; MCL 436.33; MSA 18.1004).

3. INTOXICATING LIQUORS — NEGLIGENCE — FURNISHING LIQUOR TO MINORS — SOCIAL HOSTS.

Under the Liquor Control Act, a person who knowingly sells or furnishes alcoholic liquor to a person who is less than twenty-one years of age, or who fails to make a diligent inquiry as to whether the person is less than twenty-one years of age, is guilty of a misdemeanor; because the section of the act prohibiting such sales is considered a penal statute, its violation is prima facie evidence of negligence (MCL 436.33; MSA 18.1004).

DISSENTING OPINION BY BOYLE, J.

4. INTOXICATING LIQUORS — FURNISHING LIQUOR TO MINORS — SOCIAL HOSTS.

*No cause of action exists for civil damages against noncommercial social hosts who unlawfully furnish alcohol to persons between the ages of eighteen and twenty-one to compensate for injury to the intoxicated person (MCL 436.33; MSA 18.1004).*

*LeFevre, Swartz & Wilson* (by *Martin B. Wilson*) for the plaintiffs.

*Collison, Chasnis & Dogger, P.C.* (by *Jeffrey C. Collison*), for defendants Gensel.

*O'Neill, Ackerman, Wallace, Doyle & Jones, P.C.* (by *Terence J. O'Neill* and *Timothy L. Tacket*), for defendants Langston.

CAVANAGH, J. The issue presented is whether

plaintiffs can maintain a cause of action based on violation of MCL 436.33; MSA 18.1004, which prohibits a person from knowingly selling or furnishing alcoholic liquor to a person under twenty-one years of age, against persons who are social hosts.

I

The trial court granted defendants' motion for summary judgment on the basis of a failure to state a claim upon which relief could be granted. GCR 1963, 117.2(1). A motion brought under this subrule tests the legal sufficiency of plaintiffs' complaint. The motion should be granted only if the claims are so clearly unenforceable as a matter of law that no factual development could possibly justify recovery. *Abel v Eli Lilly & Co,* 418 Mich 311, 323-324; 343 NW2d 164 (1984), *reh den* 419 Mich 1201 (1984), *cert den sub nom E R Squibb & Sons, Inc v Abel,* 469 US 833 (1984). Accordingly, for the purposes of this appeal, we accept as true all well-pled allegations contained in plaintiffs' complaint.

A

On July 7, 1979, plaintiffs' nineteen-year-old son, Jamie Longstreth, attended a private wedding reception hosted by the Gensels and the Langstons. While at the reception, Jamie consumed an unspecified amount of alcoholic beverage. In the early morning hours of July 8, 1979, Jamie was killed in an automobile accident.

Plaintiffs initially alleged that the defendants breached a duty not to give, provide, or furnish alcoholic beverages to anyone under the age of twenty-one. Plaintiffs further alleged that the defendants were negligent in furnishing alcohol to Jamie and that this negligence was the proximate

cause of his death. *Longstreth v Fitzgibbon,* 125 Mich App 261, 265; 335 NW2d 677 (1983).[1]

In response to defendants' motion for summary judgment, plaintiffs argued that MCL 436.33; MSA 18.1004 imposed a duty not to furnish alcoholic beverage to a person under twenty-one years of age. The trial court noted that the common law did not recognize a cause of action against social hosts. It then ruled that the statute only applied to licensees under the Michigan Liquor Control Act, MCL 436.1 *et seq.;* MSA 18.971 *et seq.,* and entered summary judgment for the Gensels and Langstons.

### B

The Court of Appeals disagreed:

> Our review of the current statute, MCL 436.33; MSA 18.1004, which prohibits the selling or furnishing of alcoholic beverages to a minor, leads us to conclude that its application is not limited to Liquor Control Act licensees; rather, it is applicable to all persons who violate its terms. We believe that the Legislature did not intend to eliminate the misdemeanor offense attendant to the furnishing of alcoholic beverages to minors by persons other than licensees under the Liquor Control Act.
>
> * * *
>
> Accordingly, we hold that a civil cause of action continues to exist for injuries or death caused by the furnishing of liquor to a minor by a social host or other persons not falling under the purview of the Liquor Control Act. [*Longstreth, supra,* p 266.]

The Court of Appeals remanded the case with instructions to allow plaintiffs to amend their

---

[1] Plaintiffs' complaint contained other counts against other defendants, including Dennis Fitzgibbon, personal representative of the estate of Bryan Fitzgibbon. Bryan Fitzgibbon was the driver of the other vehicle involved in the accident. However, this appeal only involves the propriety of the summary judgment in favor of the social hosts, defendants Gensel and Langston.

complaint to state a cause of action in accordance with MCL 436.33; MSA 18.1004. Plaintiffs amended their complaint,[2] and we granted defendants' application for leave to appeal. 418 Mich 876 (1983).

II

We are asked once again to ascertain and give effect to the intention of the Legislature. We may determine legislative intent after considering the language and general scope of the act, in light of the general purpose it seeks to accomplish or the evil it seeks to remedy. *White v City of Ann Arbor,* 406 Mich 554, 562; 281 NW2d 283 (1979). We agree with the Court of Appeals that the provisions of § 33 are not limited to licensees. The development of the act as a whole, and specifically § 33, persuades us that the Legislature intended the act to have a broad scope.

A

The historical development of the act supports our conclusion that the act was intended to govern the entire regulation of liquor within Michigan. During Prohibition, it was illegal, among other

[2] Specifically, the Court of Appeals noted that plaintiffs' amended complaint failed to allege that defendants "knowingly sold or furnished alcoholic liquor to a person who is less than 21 years of age, or . . . fail[ed] to make diligent inquiry as to whether the person is less than 21 years of age." *Longstreth, supra,* p 267. Plaintiffs filed their second and third amended complaints on April 13, 1983, and April 18, 1983, respectively. The relevant allegations are identical to those found in the Court of Appeals opinion, except for the addition of the following allegations in paragraph 52:

"52. That it was then and there the duty of Defendants Edward Gensel, Mrs. Edward Gensel, Samuel Langston and Myrna Langston, to:

"F. Not knowingly sell or furnish alcoholic beverages to Plaintiffs' decedent, Jamie H. Longstreth, who was less than 21 years of age.

"G. Not sell or furnish alcoholic beverages to Plaintiffs' decedent, Jamie H. Longstreth, without making diligent inquiry as to whether said Jamie H. Longstreth was less than 21 years of age."

things, to manufacture, sell, give away, or furnish intoxicating liquors to anyone. 1917 PA 338. However, the Prohibition Act was repealed by 1933 PA 64. The 1933 regular session act was then repealed by the present Liquor Control Act. 1933 (Ex. Sess) PA 8. The present act was based on a referendum.

At the November election in 1932, the people adopted a constitutional amendment (Const 1908, art 16, § 11), which reads:

"The legislature may by law establish a liquor control commission, who, subject to statutory limitations, *shall exercise complete control of the alcoholic beverage traffic within this State, including the retail sales thereof;* and the legislature may also provide for an excise tax on such sales; Providing, however, that neither the legislature nor such commission may authorize the manufacture or sale of alcoholic beverages in any county in which the electors thereof, by a majority vote, shall prohibit the same."

Following the adoption of this amendment the legislature created "a liquor control commission for the control of the alcoholic beverage traffic within this State," and prescribed "its powers, duties and limitations," et cetera. Act No. 8, Pub. Acts 1933 (Ex. Sess.), as amended (Comp. Laws Supp. 1940, § 9209-16 *et seq.,* Stat. Ann. § 18.971 *et seq.*). [*Black v Liquor Control Comm,* 323 Mich 290, 293; 35 NW2d 269 (1948). Emphasis supplied.]

On the basis of Const 1908, art 16, § 11, the Legislature provided that alcohol could be sold to persons twenty-one years of age or older. However, the Age of Majority Act, passed in response to ratification of the Twenty-sixth Amendment to the United States Constitution, granted certain rights and privileges to eighteen-year-olds. As a result, the legal drinking age was reduced, and alcoholic liquor could legally be sold to those persons eighteen years of age or older. 1972 PA 13.

However, in 1978, the people of this state passed Proposal D, which returned the legal drinking age to twenty-one years. In doing so, the people retained the "complete control" language found in Const 1908, art 16, § 11, as emphasized in *Black, supra.* Const 1963, art 4, § 40 now provides:

> *A person shall not sell or give any alcoholic beverage to any person who has not reached the age of 21 years. A person who has not reached the age of 21 years shall not possess any alcoholic beverage for the purpose of personal consumption.* An alcoholic beverage is any beverage containing one-half of one percent or more alcohol by volume.
>
> Except as prohibited by this section, the legislature may by law establish a liquor control commission which, subject to statutory limitations, *shall exercise complete control of the alcoholic beverage traffic within this state, including the retail sales thereof.* The legislature may provide for an excise tax on such sales. Neither the legislature nor the commission may authorize the manufacture or sale of alcoholic beverages in any county in which a majority of the electors voting thereon shall prohibit the same. [Emphasis supplied.]

We believe that this recent constitutional amendment recognizes three very important principles. First, the raising of the drinking age indicates that the people of this state have made a public policy determination that persons under twenty-one years of age should not possess alcohol for the purpose of personal consumption. Second, other persons should be prohibited from selling or giving away alcohol to those under twenty-one years of age. These first two principles will be discussed below.

The third principle is more applicable to our present analysis. The amendment makes it clear that, from the very inception of the act to the

present, the people intended the Liquor Control Commission to exercise *complete* control of the alcoholic beverage traffic within this state, *including* (and by implication, not limited to) its retail sale. The title of the act has been given a broad interpretation to effectuate the will of the people. See *Beacon Club v Kalamazoo Co Sheriff,* 332 Mich 412, 420; 52 NW2d 165 (1952). The act does more than merely regulate liquor traffic; it involves the public health, safety, and morals. *Turner v Schmidt Brewery Co,* 278 Mich 464, 469; 270 NW 750 (1936). Therefore, the act was not intended to apply only to licensees. It was intended to govern the entire regulation of liquor within Michigan.

## B

A reading of specific statutes within the act also indicates that its purview is not restricted to licensees. "Person" includes any person, firm, partnership, association, or corporation. MCL 436.2k; MSA 18.972(11).[3] "Sale" includes exchange, barter, traffic, or the furnishing or giving away of any alcoholic liquor. MCL 436.2n; MSA 18.972(14). The act prohibits the consumption of alcoholic liquor on the public highways. MCL 436.34; MSA 18.1005. It also prevents a person less than twenty-one years of age from knowingly transporting or possessing alcohol in a motor vehicle unless

---

[3] We note that we have given this term a more restrictive meaning in the past. See *Guitar v Bieniek,* 402 Mich 152; 262 NW2d 9 (1978). However, *Guitar* is distinguishable. There, we addressed whether a private rental hall fell within the definition of "person," thereby subjecting the hall to liability under § 22 of the act. We emphasized that the term should be interpreted in light of the definitional section, *unless the context required otherwise. Guitar, supra,* pp 157-158. We held that liability *under § 22* was limited to persons within the class of retailers specifically delineated in § 22, as well as those "equally chargeable" under that section. *Guitar, supra,* pp 166-167.

However, *Guitar* did not address potential liability under § 33. Therefore, that case does not prevent us from ascribing a broader interpretation to the term "person" as the context may require.

the person is employed by a licensee. MCL 436.33a; MSA 18.1004(1). Obviously, these sections were not included with only licensees in mind. Instead, the act was meant to apply to all persons who violate its terms.

## C

Defendants argue that the dramshop provision of the act, MCL 436.22; MSA 18.993, is the exclusive remedy for persons claiming injury under the act.

At common law, it was not a tort to sell, give away, or furnish intoxicating liquors to an able-bodied adult. The rule was based on the theory that the drinking of the liquor, rather than the furnishing of it, was the proximate cause of the injury.[4] Accordingly, the dramshop provision was meant to "fill a void" created by the common-law rule. See *Manuel v Weitzman,* 386 Mich 157, 163; 191 NW2d 474 (1971).

However, it must be emphasized that § 22, the dramshop provision, is only a small portion or subset of the whole act.[5] *Browder v Int'l Fidelity Ins Co,* 413 Mich 603, 606, n 3; 321 NW2d 668 (1982). The dramshop section of the act imposes bonding requirements on certain licensees. It also imposes liability on licensees for injuries caused to third persons as a result of the sale or furnishing of liquor to minors or visibly intoxicated adults. Thus, § 22 specifically deals with the obligations and liabilities of licensees.

However, the present appeal does not involve an attempt to impose liability on a licensee. Plaintiffs'

---

[4] See, generally, 48A CJS, Intoxicating Liquors, § 430, p 139; 45 Am Jur 2d, Intoxicating Liquors, § 553, p 852; see also *Hollerud v Malamis,* 20 Mich App 748, 754-755; 174 NW2d 626 (1969).

[5] In this respect, the Court of Appeals mislabeled the entire act. See *Longstreth, supra,* p 263, n 1.

complaint is brought against social hosts, and is grounded on the violation of § 33 and not § 22 of the act. Accordingly, the defendants' reliance on several cases, holding that § 22 of the act is a plaintiff's exclusive remedy against licensees, is misplaced. See *Manuel, supra; LeGault v Klebba,* 7 Mich App 640; 152 NW2d 712 (1967); *Lucido v Apollo Lanes & Bar, Inc,* 123 Mich App 267; 333 NW2d 246 (1983), *lv den* 417 Mich 1087. Unlike § 22, § 33 is not restricted to the regulation of licensees. To the contrary, § 33 indicates that any person who violates its terms is guilty of a misdemeanor.

### D

Defendants also rely on cases which have declined to impose liability on social hosts who dispense alcoholic beverages. See, *e.g., Behnke v Pierson,* 21 Mich App 219; 175 NW2d 303 (1970), *lv den* 384 Mich 757 (1970); *Westcoat v Meilke,* 108 Mich App 115; 310 NW2d 293 (1981). For purposes of this appeal, however, we feel that those cases are distinguishable on the basis of the fact that the liquor there was furnished to adults. Courts have reached differing conclusions regarding the imposition of liability on social hosts for furnishing liquor to adults. Compare *Kelly v Gwinnell,* 96 NJ 538; 476 A2d 1219 (1984) (host serving liquor to visibly intoxicated adult guest is liable for injuries inflicted on third parties), and *Clark v Mincks,* 364 NW2d 226 (Iowa, 1985) (common-law principles create a cause of action on behalf of third parties against host serving to adult guest on the basis of a violation of a statute which prohibits any person from selling or giving liquor to any intoxicated person), with *Klein v Raysinger,* 504 Pa 141; 470 A2d 507 (1983) (generally no liability at common law imposed on a social host who serves liquor to a

visibly intoxicated adult guest). These recent cases indicate that the law in other jurisdictions is in a state of flux in this area. We emphasize that that issue is not before us today and that the common-law rule remains the law until modified by this Court or the Legislature.

In comparison, the present appeal involves allegations that the defendants knowingly furnished alcohol to a person who was under twenty-one years of age. The people of this state (through Const 1963, art 4, § 40), as well as the Legislature (through § 33 of the act), have determined that those under twenty-one years of age should not be sold, given, or furnished alcoholic beverages. We believe that this distinction is crucial for the purposes of this appeal. *Lover v Sampson,* 44 Mich App 173, 181-182; 205 NW2d 69 (1972), accord *Congini v Portersville Valve Co,* 504 Pa 157, 160-164; 470 A2d 515 (1983).

## III

The law is not static; it is dynamic and often develops in response to changes in social mores. This is readily apparent in the issue faced today. Several sister states have recently addressed similar problems dealing with sale to minors. Although the results are mixed, these decisions recognize the increased social awareness of the dangers involved in furnishing alcohol to all age groups.

The Minnesota Supreme Court has declined to impose liability on a social host for damages occurring to a third party after a minor guest became intoxicated. *Holmquist v Miller,* 367 NW2d 468 (Minn, 1985). In that case, the Court noted that Minnesota originally imposed liability on social hosts. See *Ross v Ross,* 294 Minn 115; 200 NW2d 149 (1972). *Ross,* in turn, interpreted the Minne-

sota Dramshop Act, which at that time imposed liability "against any person, who shall by illegally selling, bartering, or giving intoxicating liquors" causes injury. However, the Minnesota Legislature deleted the phrase "or giving" from the statute in 1977. Subsequent case law indicated that this deletion evidenced the Legislature's intent to negate the holding in *Ross*. See *Holmquist, supra,* pp 470-471, citing *Cole v Spring Lake Park,* 314 NW2d 836, 840 (Minn, 1982), and *Cady v Coleman,* 315 NW2d 593, 595 (Minn, 1982).

A comparison of the development of Minnesota case law and statutory law with our own supports our conclusion that imposition of liability is warranted in this case. Our statutes have not experienced a history similar to those of Minnesota's. On the contrary, in spite of the various amendments previously discussed, both our statutes and constitution continue to prohibit any person from *giving* alcoholic beverages to those under the legal drinking age.

The Wisconsin Supreme Court held that a third party has a common-law cause of action against social hosts who knew or should have known that a minor would be driving while intoxicated. *Koback v Crook,* 123 Wis 2d 259; 366 NW2d 857 (1985). There, the complaint alleged that the defendants held a party at their home, furnished liquor to minor guests, and then allowed one of them to leave on a motorcycle while intoxicated. The plaintiff, a passenger on the motorcycle, sued after being injured when the motorcycle struck a parked car. *Koback* extended an earlier opinion, *Sorensen v Jarvis,* 119 Wis 2d 627; 350 NW2d 108 (1984), which held that a vendor's violation of a criminal statute prohibiting the sale of liquor to minors was negligence per se. The *Koback* court applied *Sorensen* and common-law negligence prin-

ciples to noncommercial vendors and concluded that it was negligence per se for anyone to furnish liquor to minors.

The Wisconsin case was decided on the basis of several statutes[6] which provided penalties for furnishing or giving liquor to those under the legal drinking age. The *Koback* court was not troubled by the fact that these statutes were grouped together with licensing regulations which clearly applied only to commercial vendors. In effect, the court said that the prohibiting statutes applied to all persons who violated their terms.

The state of Georgia also imposes liability on a social host for damages to third parties caused by the furnishing of liquor to minors. *Sutter v Hutchings*, 254 Ga 194; 327 SE2d 716 (1985). In that case, Mrs. Hutchings hosted a party for her seventeen-year-old daughter and provided a keg of beer for her guests. The complaint alleged that the hostess watched a minor guest drive away after expressing her concern for his ability to drive after drinking seven beers. The minor ran a red light and killed the plaintiffs' decedent.

---

[6] The applicable statutes are set forth in the opinion as follows:

"Sec. 66.054(20)(a), Stats. 1979-80, provides: 'Except as otherwise provided in this section, no person may sell or *furnish* fermented malt beverages to a minor . . . .' (Emphasis supplied.)

"In respect to intoxicating liquors, sec. 176.30(2)(a), Stats. 1979-80, provides: 'No person may: 1. Sell, *furnish* or *give* intoxicating liquor to a person under age 18.' (Emphasis supplied.)

"We take judicial notice of these statutes and, as in *Sorensen, supra*, we conclude that proof of the violation of either statute constitues negligence *per se*. The allegations of the complaint specifically assert that fermented malt beverages were furnished by the Brooks[ ] to Michael Crook. The complaint also alleges that the Brooks[ ] caused and permitted alcoholic beverages to be served to Michael Crook. Under the rationale of *Sorensen*, these allegations, if proved, constitute negligence *per se*. The fact that these statutes apply with particularity to vendors of the controlled beverages, by virtue of the statutes' placement among the licensing regulations, does not restrict their prohibitions to licensed persons only. They apply to all who furnish liquor or fermented malt beverages to minors." (*Koback, supra*, 123 Wis 2d 266-267.)

The Georgia statute provided:

> No person knowingly, by himself or through another, shall furnish [or] cause to be furnished . . . any alcoholic beverage to any person under 19 years of age. [Ga Code Ann, § 5A-510(1).]

The *Sutter* court concluded that this statute and others were meant to protect third parties from the actions of negligent social hosts and their intoxicated guests. However, the court declined to recognize a cause of action on behalf of the seventeen-year-old intoxicated driver against the social host, on the basis of a finding that the driver owed a duty to exercise ordinary care for his own safety. *Sutter, supra,* p 198, n 7.[7]

## IV

In light of the aforementioned principles and

---

[7] These recent decisions reflect strong policy considerations.

Although *Kelly v Gwinnell, supra,* involved an adult consumer, the competing policy considerations were aptly summarized:

"We impose this duty on the host to the third party because we believe that the policy considerations served by its imposition far outweigh those asserted in opposition. While we recognize the concern that our ruling will interfere with accepted standards of social behavior; will intrude on and somewhat diminish the enjoyment, relaxation, and camaraderie that accompany social gatherings at which alcohol is served; and that such gatherings and social relationships are not simply tangential benefits of a civilized society but are regarded by many as important, we believe that the added assurance of just compensation to the victims of drunken driving as well as the added deterrent effect of the rule on such driving outweigh the importance of those other values. Indeed, we believe that given society's extreme concern about drunken driving, any change in social behavior resulting from the rule will be regarded ultimately as neutral at the very least, and not as a change for the worse; but that in any event if there be a loss, it is well worth the gain." *Kelly, supra,* p 548.

The above quotation was cited in *Koback v Crook, supra.* The Wisconsin court then added:

"To have 'carefree' social affairs where the host does not exercise care is to invite injury, suffering, and death, and, as a matter of social policy, liability for the consequences." 123 Wis 2d 276.

case law, we may now analyze the specific statute which forms the basis of plaintiffs' complaint. The current version of § 33 provides:

> Alcoholic liquor shall not be sold or furnished to a person unless the person has attained 21 years of age. *A person who knowingly sells or furnishes alcoholic liquor to a person who is less than 21 years of age, or who fails to make diligent inquiry as to whether the person is less than 21 years of age, is guilty of a misdemeanor.* A suitable sign which describes this section and the penalties for violating this section shall be posted in a conspicuous place in each room where alcoholic liquors are sold. The signs shall be approved and furnished by the state liquor control commission. [Emphasis supplied.]

This statute has been amended several times, dating back to its original enactment as part of 1933 (Ex Sess) PA 8. However, for purposes of this appeal, the most important change in § 33 was caused by enactment of 1978 PA 531, which repealed MCL 750.141a; MSA 28.336(1) (the specific criminal statute prohibiting sale to a minor).[8] Defendants argue that the repeal of that criminal statute extinguishes plaintiffs' cause of action. We disagree.

Again, a brief historical analysis is instructive. Up until 1943, the Penal Code did not contain a statute regulating the noncommercial furnishing of alcoholic liquor to minors. However, 1943 PA 205 amended the Penal Code by adding the following section:

> Any person, who wilfully gives or furnishes any alcoholic beverage to a minor except upon authority of and pursuant to a prescription of a duly

---

[8] 1978 PA 531 became effective on December 21, 1978. The actions involved in plaintiffs' complaint occurred on July 7 and 8, 1979.

licensed physician, shall be guilty of a misdemeanor. [MCL 750.141a; MSA 28.336(1).]

The statute was later amended by 1963 PA 162, § 1 to provide:

Any person, who knowingly gives or furnishes any alcoholic beverage to a minor except upon authority of and pursuant to a prescription of a duly licensed physician, shall be guilty of a misdemeanor, and if the furnishing involved any consideration, the person shall be imprisoned for not more than 1 year or fined not more than $1,000.00 or both.

Prior to enactment of 1978 PA 531 (which repealed the statute quoted above), the Court of Appeals held that a civil cause of action existed on the basis of a breach of duty caused by violation of MCL 750.141a; MSA 28.336(1). See *Lover v Sampson, supra; Thaut v Finley,* 47 Mich App 542; 209 NW2d 695 (1973), *rev'd on reh* 50 Mich App 611; 213 NW2d 820 (1973). The Legislature is presumed to know of statutory interpretations by the Court of Appeals and this Court. *SEMTA v Dep't of Treasury,* 122 Mich App 92, 103; 333 NW2d 14 (1982); *Jeruzal v Wayne Co Drain Comm'r,* 350 Mich 527, 534; 87 NW2d 122 (1957). After *Lover* was decided in 1972, and especially during the legislative process which led to enactment of 1978 PA 531, the Legislature could have easily addressed this question. However, subsequent to *Lover* and *Thaut,* we find no indication that the Legislature intended to address this precise question.

On the contrary, after comparing the current version of § 33 with MCL 750.141a; MSA 28.336(1), we find that the Legislature incorporated the salient terms of the latter statute (1963 PA 162) into

§ 33. This is consistent with the Legislature's intent that the act regulate all liquor activity within the state. In other words, it made sense to incorporate the terms of the former penal provision into the act, since it was meant to regulate all aspects of liquor consumption within the state.

Section 33 now provides that a person who knowingly sells or furnishes liquor to anyone under twenty-one years of age, or fails to make diligent inquiry regarding the person's age, is guilty of a misdemeanor. MCL 750.141a; MSA 28.336(1), is no longer part of the Penal Code. However, violations of certain provisions of § 33 remain misdemeanors. Accordingly, we consider § 33 to be a penal statute.[9]

Although the Legislature has not addressed social host liability, we must determine whether § 33 provides a basis for liability where the complaint alleges negligence in furnishing intoxicating beverages to a minor. The proven violation of a penal statute is prima facie evidence of negligence. *Zeni v Anderson,* 397 Mich 117, 128-129, 143; 243 NW2d 270 (1976), citing *Thaut, supra; Massey v Scripter,* 401 Mich 385, 394-395; 258 NW2d 44 (1977). See generally 57 Am Jur 2d, Negligence, § 245, p 628.

However, this type of evidence is only available to certain plaintiffs under certain situations. 2 Restatement Torts, 2d, § 286, p 25 states:

> The court may adopt as the standard conduct of

---

[9] In this context, "penal" pertains to a statute which prescribes a punishment and relates to acts which are not necessarily delineated as criminal. 70 CJS, Penal, p 386; 82 CJS, Statutes, § 389, pp 922-924. Thus, the mere fact that MCL 750.141a; MSA 28.336(1) is no longer part of the Penal Code does not mean that portions of § 33 cannot be considered penal in nature. For example, the penal statute in *Zeni v Anderson,* 397 Mich 117; 243 NW2d 270 (1976), required pedestrians to walk on the sidewalk, or on the left side of the highway if no sidewalk was provided. That penal statute was part of the Motor Vehicle Code.

a reasonable man the requirements of a legislative enactment or an administrative regulation whose purpose is found to be exclusively or in part

(a) to protect a class of persons which includes the one whose interest is invaded, and

(b) to protect the particular interest which is invaded, and

(c) to protect that interest against the kind of harm which has resulted, and

(d) to protect that interest against the particular hazard from which the harm results.

See also *Zeni, supra,* pp 137-138, ns 21, 22; Prosser & Keeton, Torts (5th ed), § 36, pp 229-230; 57 Am Jur 2d, Negligence, §§ 257-258, pp 641-643; SJI2d 12.01.

We find that the alleged violation of § 33 was sufficient to preclude summary judgment. Section 33 was meant to protect a class of persons, *i.e.,* those under the legal drinking age, and this plaintiff falls within that class. The statute protects a particular interest, *i.e.,* freedom from injury caused by the use of alcohol by persons under twenty-one years of age. We again stress that this interest exists as a result of legislation (§ 33) and constitutional provision (Const 1963, art 4, § 40). Section 33 was meant to protect against the kind of harm which resulted, *i.e.,* injury and death. Finally, the statute was meant to protect against a particular hazard, *i.e.,* the dangerous effects of intoxication of those under twenty-one years of age. Therefore, we hold that the plaintiffs can maintain a cause of action based on violation of § 33.

We hold today only that a violation of § 33 creates a rebuttable presumption of negligence. In *Zeni, supra,* p 143, Justice WILLIAMS wrote:

An accurate statement of our law is that when a

court adopts a penal statute as the standard of care in an action for negligence, violation of that statute establishes a prima facie case of negligence, with the determination to be made by the finder of fact whether the party accused of violating the statute has established a legally sufficient excuse. If the finder of fact determines such an excuse exists, the appropriate standard of care then becomes that established by the common law. Such excuses shall include, but shall not be limited to, those suggested by [2] Restatement Torts, 2d, § 288A, and shall be determined by the circumstances of each case.

Section 33 prohibits any person from knowingly selling or furnishing alcohol to anyone under the legal drinking age. Accordingly, a defendant's lack of knowledge may be an excuse depending on the facts of the case. See *Christensen v Parrish*, 82 Mich App 409; 266 NW2d 826 (1978).

V

We have heretofore focused on the liability of the social host. However, we do not believe that our analysis should stop there. The majority of cases in this area involve injuries inflicted upon innocent third parties by the intoxicants. See, *e.g.*, *Lover v Sampson, supra; Clark v Mincks, supra; Koback v Crook, supra.* But we are confronted with the more difficult question regarding whether an underage person can recover for injury inflicted upon himself after consuming alcohol furnished by his host.

This question arises due to the general rule that the drinking of liquor, rather than the furnishing of it, is the proximate cause of a plaintiff's injury. See n 4. However, the general rule, as applied to

both licensees[10] and social hosts,[11] has been rejected recently.

Furthermore, the question of proximate cause is one for the trier of fact. In the present case, the proven violation of § 33 would establish the plaintiffs' prima facie case. They are still required to establish proximate cause. *Zeni, supra,* p 143; *Con-*

---

[10] *In Brannigan v Raybuck,* 136 Ariz 513, 516; 667 P2d 213 (1983), the Arizona Supreme Court stated:

"There are cases holding that the seller of liquor is not liable for the mere sale of liquor to an intoxicated person who subsequently causes injury to himself as the result of intoxication. *Noonan v Galick,* 19 Conn Supp 308, 310; 112 A2d 892 (1955); see 48A CJS, *Intoxicating Liquors,* § 428 at 134. A growing number of cases, however, have recognized that one of the very hazards that makes it negligent to furnish liquor to a minor or intoxicated patron is the foreseeable prospect that the patron will become drunk and injure himself or others. See *Vesely v Sager,* 5 Cal 3d 153, 164; 95 Cal Rptr 623; 486 P2d 151 (1971). Accordingly, modern authority has increasingly recognized that one who furnishes liquor to a minor or intoxicated patron breaches a common law duty owed both to innocent third parties who may be injured and to the patron himself. See *Nazareno v Urie,* 638 P2d 671 (Alas, 1981); *Rappaport v Nichols,* 31 NJ 188; 156 A2d 1 (1959); *Jardine v Upper Darby Lodge No 1973, Inc,* 413 Pa 626; 198 A2d 550 (1964)."

[11] In distinguishing the general rule of nonliability, the *Congini* court stated:

"In *Klein v Raysinger, supra,* we held that there exists no common law liability on the part of a social host for the service of intoxicants to his adult guests. In arriving at this decision we relied upon the common law rule that in the case of an ordinary able bodied man, it is the consumption of alcohol rather than the furnishing thereof, that is the proximate cause of any subsequent damage.

"However, our legislature has made a legislative judgment that persons under twenty-one years of age are incompetent to handle alcohol. Under Section 6308 of the Crimes Code 18 Pa C S § 6308, a person 'less than 21 years of age' commits a summary offense if he 'attempts to purchase, purchases, consumes, possesses or transports any alcohol, liquor or malt or brewed beverage.' Furthermore, under Section 306 of the Crimes Code, 18 Pa C S A § 306, an adult who furnishes liquor to a minor would be liable as an accomplice to the same extent as the offending minor.

"This legislative judgment compels a different result than *Klein,* for here we are not dealing with ordinary able bodied men. Rather, we are confronted with persons who are, at least in the eyes of the law, incompetent to handle the effects of alcohol. Accord, *Burke v Superior Court,* 129 Cal App 3d [570,] 575; 181 Cal Rptr [149,] 151 [1982]; *Thaut v Finley, supra* (197[3]); *Lover v Sampson,* 44 Mich App 173; 205 NW2d 69 (1972)."

*gini, supra,* p 163, n 4. We are unable to state at this time that the plaintiffs' cause of action is precluded as a matter of law.

We recognize that our conclusion gives this underage plaintiff a remedy against his hosts which is not presently available under § 22 against licensees. In spite of the "growing number of cases" in other jurisdictions (n 10), an intoxicated person cannot sue *licensees* under § 22 for injuries in this state. See, generally, *Kangas v Suchorski,* 372 Mich 396, 399-400; 126 NW2d 803 (1964). This Court has not yet chosen to address a licensee's responsibility to an intoxicated minor. Nevertheless, we believe that today's decision is supported by law and public policy.

A dramshop action is based on § 22, which has been interpreted to provide an exclusive statutory remedy on behalf of designated third parties against licensees. The cause of action is not based on negligence principles. *Dahn v Sheets,* 104 Mich App 584, 593; 305 NW2d 547 (1981). This must be compared with the present case, which *is* based on common-law negligence principles. Accordingly, application of 2 Restatement Torts, 2d, § 286, persuades us that this underage guest can assert a cause of action for his own injuries, since he clearly falls within the class of persons which the statute intends to protect. *Congini, supra,* p 163.

Finally, we believe that application of comparative negligence principles may lessen any perceived hardships of this rule. Defendants asserted, as an affirmative defense, that Jamie Longstreth was negligent by failing to use proper care for his own safety when he drove after drinking at the wedding reception. In analyzing this question, we are again aided by recent cases regarding the contributory or comparative negligence of the driver-consumer.

In *Congini, supra,* p 164, the Pennsylvania Supreme Court held that an eighteen-year-old driver could maintain a suit against his employer which hosted a Christmas office party. Social-host liability was based on a violation of a penal statute and 2 Restatement Torts, 2d, § 286. The court added that an eighteen-year-old driver who knowingly consumed alcohol was also guilty of a summary offense. The court concluded:

> Thus, although we recognize that an eighteen year old minor may state a cause of action against an adult social host who has knowingly served him intoxicants, the social host in turn may assert as a defense the minor's "contributory" negligence. Thereafter, under our Comparative Negligence Act 42 Pa C S § 7102 it will remain for the fact finder to resolve whether the defendant's negligence was such as to allow recovery.

*Congini, supra,* pp 162-166. See, also, *Young v Caravan Corp,* 99 Wash 2d 655; 663 P2d 834; 672 P2d 1267 (1983) (contributory negligence of the minor driver diminishes recovery in proportion to the percentage of negligence); but see *Sutter v Hutchings, supra,* n 7 (minor driver cannot recover against the social host, since as between the host and consumer, consumer had last opportunity to avoid the effects of the alcohol).

We believe that the rules enunciated in *Congini* and *Young* are more consistent with our current interpretation of § 33 and the doctrine of comparative negligence. The central focus of this appeal is on the liability of the social hosts. However, we cannot allow this focus to obscure the entire record. Although Jamie was not considered competent to handle the effects of the intoxication, the law does presume that he was competent to drive an

automobile in a nonnegligent manner.[12] In light of the fact that this is an appeal based on reversal of a summary judgment, we express no opinion on the asserted affirmative defenses. This is a matter which should be decided by the jury. However, we do believe that comparative negligence principles should be considered on remand and applied if the facts so demand.

## VI

The dangers and policy considerations related to serving intoxicants are especially significant when underage persons are involved. In Michigan, imposition of various sanctions and penalties on the basis of furnishing of liquor to underage persons has had a long history.[13]

---

[12] *"The accepted rule now is that a breach of statute by the plaintiff is to stand on the same footing as a violation by the defendant.* A few courts have held that the plaintiff's breach does not constitute contributory negligence as a matter of law, upon the ground that the statutes were enacted for the protection of others, and not of the actor himself. *But it seems clear that the safety statutes,* such as speed laws and traffic rules, *usually are designed for the broad purpose of preventing accidents or dangerous situations, in which the plaintiff is quite as likely to be hurt as the defendant; and it is not difficult to discover a purpose to protect the plaintiff by setting up a standard of his own conduct, the unexcused violation of which is negligence per se, or evidence of negligence, as the jurisdiction may provide.* If, as is frequently the case, the statute is found to be intended solely for the protection of other persons, or the prevention of a different type of risk, the breach will be irrelevant, or at best evidence of negligence for the jury. *The assertion that in such cases the breach of statute is not the proximate cause of the harm has no more validity here than in the case of a violation on the part of the defendant."* Prosser & Keeton, *supra,* pp 231-233. (Emphasis supplied; footnotes omitted.) See also 2 Restatement Torts, 2d, § 469, pp 518-519.

[13] This tradition literally spans Michigan's statehood. RS 1838, part 1, tit 9, ch 5, § 11 provided:

"No tavern keeper or common victualler shall suffer any person to drink to drunkenness or intoxication in his premises, *nor suffer any minor,* travellers excepted, *to have any strong drink there,* on pain of forfeiting five dollars for each offence." (Emphasis supplied.)

However, this is the first time we have been called upon to address this precise question. Accordingly, this opinion shall apply to the instant case, cases commenced after issuance of this opinion, and cases pending in the trial and appellate courts.

Affirmed.

WILLIAMS, C.J., and LEVIN and BRICKLEY, JJ., concurred with CAVANAGH, J.

BOYLE, J. (*dissenting*). The question in this case is whether a civil damage action against noncommercial social hosts who unlawfully furnish alcohol to underage persons exists in Michigan to compensate for injury to the intoxicated person. I would hold that a cause of action does not exist against social hosts in favor of injured inebriates.

I

Appellees urge this Court to find a civil cause of action based upon violation of MCL 436.33; MSA 18.1004. Section 33(1) prohibits the knowing sale or furnishing of alcoholic beverages to persons

---

The tradition continued after the repeal of the second period of Prohibition. 1933 (Ex Sess) PA 8, § 33 provided:

"No alcoholic liquor, other than beer, shall be sold to any person unless he shall have attained the age of twenty-one years; and no beer shall be sold to any person unless he shall have attained the age of eighteen years."

1943 PA 205 added MCL 750.141a; MSA 28.336(1) to the Criminal Code, and vital terms were incorporated into the present version of § 33 of the act. Today, the tradition applies to licensees as well as social hosts. See 1980 PA 351, which amended § 22 to impose liability on a licensee for furnishing liquor to minors and to visibly intoxicated adults. See also 1984 PA 348 which established a drunk-driving task force.

under age twenty-one.[1] While in the past this Court has found that violation of other criminal or penal statutes provided evidence of negligence,[2] in my view it is inappropriate to do so in this instance.

The Michigan dramshop act, found at MCL 436.22; MSA 18.993, addresses itself to some of the problems caused by the misuse of alcohol. It is compensatory, preventive, and penal. While other sections of the Michigan Liquor Control Act prohibit the serving of intoxicated persons, MCL 436.29; MSA 18.1000, and the knowing sale or furnishing of liquor to underage persons, MCL 436.33; MSA 18.1004, MCL 436.22; MSA 18.993 specifically provides a civil cause of action against specified persons in favor of injured innocent victims. See generally *Kangas v Suchorski*, 372 Mich 396, 401; 126 NW2d 803 (1964). The Legislature declined to provide a cause of action for injured intoxicants, restricting recovery to injured innocent victims.

The course urged upon us today would provide a cause of action for an underaged person injured because of his own intoxication. Only two states

---

[1] Section 33(1) provides:

"Alcoholic liquor shall not be sold or furnished to a person unless the person has attained 21 years of age. A person who knowingly sells or furnishes alcoholic liquor to a person who is less than 21 years of age, or who fails to make diligent inquiry as to whether the person is less than 21 years of age, is guilty of a misdemeanor. A suitable sign which describes this section and the penalties for violating this section shall be posted in a conspicuous place in each room where alcoholic liquors are sold. The signs shall be approved and furnished by the state liquor control commission."

[2] See, *e.g.*, *Zeni v Anderson*, 397 Mich 117; 243 NW2d 270 (1976) (violation of statute requiring pedestrian to walk on sidewalk or facing traffic creates prima facie case of negligence); *Massey v Scripter*, 401 Mich 385; 258 NW2d 44 (1977) (rebuttable presumption of negligence based on violation of statute requiring bicycle riders to ride on the right side of the road); *Hardy v Monsanto Enviro-Chem Systems, Inc*, 414 Mich 29, 47; 323 NW2d 270 (1982) (violation of safety statute is prima facie negligence).

have recognized a cause of action giving recovery to the inebriate rather than to third parties harmed by the inebriate. See *Congini v Portersville Valve Co,* 504 Pa 157; 470 A2d 515 (1983) (injured intoxicant stated a cause of action against his employer who violated a penal statute barring the furnishing of liquor to underaged persons), and *Young v Caravan Corp,* 99 Wash 2d 655; 663 P2d 834; 672 P2d 1267 (1983) (injured inebriate had cause of action against vendor who sold to the underaged person in violation of penal statute). Neither Pennsylvania nor Washington has a comprehensive dramshop act like MCL 436.22; MSA 18.993. Since the Michigan Legislature has consistently failed to provide such a cause of action against commercial vendors of alcohol, it would be anomalous to judicially provide such an action against social hosts. Indeed, MCL 436.33; MSA 18.1004 restricts the *selling* as well as the *furnishing* of alcohol to underaged persons. For a logically consistent implication of tort liability based upon violation of § 33, this Court would have to find a cause of action for an injured underage intoxicant against not only social hosts, but also commercial vendors. Such a result would be in clear violation of the legislative intent expressed in § 22.

The existence of two Court of Appeals decisions recognizing a cause of action based upon violation of the precursor of § 33, *Lover v Sampson,* 44 Mich App 173; 205 NW2d 69 (1972); *Thaut v Finley,* 47 Mich App 542; 209 NW2d 695 (1973), *rev'd on reh* 50 Mich App 611; 213 NW2d 820 (1973), does not require a different result. First, the doctrine of legislative acquiescence is less applicable to intermediate appellate court rulings than to rulings of the court of last resort. Our cases utilizing the doctrine of legislative acquiescence generally presume that the Legislature is aware of decisions of

this Court and that if the Legislature disagreed with our decision, appropriate legislation would result. See *Magreta v Ambassador Steel Co,* 380 Mich 513, 519-520; 158 NW2d 473 (1968); *Jeruzal v Wayne Co Drain Comm'r,* 350 Mich 527, 534; 87 NW2d 122 (1957). Secondly, *Lover* and *Thaut* recognized causes of action in favor of injured third parties rather than injured intoxicants.

## II

Finally, I believe that the type of harm which occurred in this case was not the kind of harm against which the increased drinking age imposed by Const 1963, art 4, § 40, and the resultant enactment of § 33 of the Liquor Control Act, MCL 436.33; MSA 18.1004, was meant to protect. Proposal D, adopted in 1978 by the people to increase the legal drinking age, and § 33, enacted by 1978 PA 531 to effectuate Proposal D, were primarily intended to protect innocent persons from the ravages of alcohol-related traffic accidents involving inebriates between the ages of eighteen and twenty-one.

Before a court adopts violation of a penal statute as the standard of care in a negligence action, the purpose of the legislation must be ascertained. Comment *d* of Restatement Torts, 2d, § 286, p 26 states:

> The decision to adopt the [legislative] standard is purely a judicial one, for the court to make. When the court does adopt the legislative standard, it is acting to further the general purpose which it finds in the legislation, and not because it is in any way required to do so.

In this instance, the general purpose of Proposal D, the 1978 constitutional amendment which

raised the drinking age from eighteen to twenty-one, must be ascertained. Indeed, the purpose of the people who adopted Proposal D is the most important factor, since 1978 PA 531 was enacted to effectuate the people's intent in adopting Proposal D.[3]

While an incidental purpose may have been to protect youthful inebriates from the effects of their own intoxication, *Felix v Milliken,* 463 F Supp 1360, 1377-1378 (ED Mich, 1978), the purpose of Proposal D appears primarily to have been to decrease alcohol-related traffic accidents, see generally *id.* at 1377-1382, to decrease drinking problems in the schools, and to decrease the availability of liquor to persons under the age of eighteen. See, *e.g.,* The Detroit News, November 1, 1978, at 10-D, col 1 & 2.[4]

The first purpose, the reduction of traffic accidents, is directed towards the welfare of the general public—decreasing traffic accidents caused by intoxicated persons between ages eighteen and

---

[3] Senator Welborn, who voted against 1978 PA 531 because he felt that the people wanted stronger penalties, said:

"Mr. President and members of the Senate, I voted 'no' on House Bill No. 6731. *This bill is intended to implement Proposal D, the Constitutional amendment that was passed by the people of this state.* I personally did not vote for Proposal D. In fact, I publicly advocated my opposition during the campaign. However, in my opinion, the people did speak very loudly on this. They did not speak on the issue of prohibiting alcoholic beverages to be sold or consumed by people under the age of 21 simply by giving them a slap on the wrist." 1978 Senate Journal 2704 (emphasis added).

[4] In the Detroit News explanation of Proposal D, the arguments in favor of the amendment were stated as follows:

"Proponents are not pleased by the pending law raising the minimum age to 19. They say there has been an increase in alcohol-related traffic accidents and drinking problems in the schools as [a] result of the lower drinking age.

"Proponents say that when the law changed the drinking age to 18, it created a flow of alcohol to even younger children. They cite a recent study by a University of Michigan researcher, showing the lower drinking age has caused an average of 54 additional traffic deaths per year in Michigan over the past two years."

twenty-one. The second purpose is directed towards improving discipline in schools. The third purpose is directed towards protecting persons younger than eighteen.

Therefore, I would conclude that the creation of a cause of action in this factual context is improper because the harm here was not of the kind which Proposal D and § 33 were primarily intended to prevent. Absent a clear and strong legislative intention to protect these persons from the effects of their own intoxication, I would decline to recognize a cause of action in favor of these appellees.

RYAN, J. I dissent from the decision of the majority for the reasons stated in Part I of Justice BOYLE's opinion.

RILEY, J., took no part in the decision of this case.